[Civ. No. 14514. Fourth Dist., Div. One. Mar. 14, 1977.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION,
Plaintiff and Appellant, v.
DESERT OUTDOOR ADVERTISING, INC.,
Defendant and Appellant.

442

## COUNSEL

Harry S. Fenton, Emerson W. Rhyner, Stephen A. Mason and Ronald W. Beals for Plaintiff and Appellant.

Lewis & Kroll and David K. Kroll for Defendant and Appellant.

## OPINION

**COLOGNE, J.**—On May 5, 1972 the State of California Department of Transportation (Department) sued Desert Outdoor Advertising, Inc.

(Desert) under the Outdoor Advertising Act (Act) (Bus. & Prof. Code, § 5200 et seq.)[1] seeking an order requiring Desert to remove four outdoor advertising displays immediately and without compensation, and declaring each of the four displays is unlawfully placed and is being unlawfully maintained in violation of the Act. Desert appeals from a portion of the judgment in which the trial court granted a summary judgment in favor of the Department as to two displays. The Department appeals from the remainder of the judgment in which the trial court declared part of the Act unconstitutional and dismissed the Department's action as to the other two displays.

The summary judgment was granted on January 2, 1973, as to two outdoor advertising displays located within 660 feet of the edge of the right of way of Interstate Route 15 in San Bernardino County and bearing the Department's permit numbers 3979 and 14230. Desert's declaration in opposition to the motion for summary judgment stated these two displays, within five years before the complaint was filed, "were lawfully in existence in a business area" and "were in a 'business area' as defined in § 5205 of the B & P Code in that they were within 1,000 feet of a commercial or industrial building or activity within five years prior to the filing of the complaint herein." The Department's declarations in support of the motion for summary judgment stated facts which if true bring the displays within the prohibitions of the Act and make certain exceptions authorized in the Act inapplicable to the displays. For example, Wesley K. Nichols' declaration for Department dated September 25, 1972, states he has determined each display "is not located within 1,000 feet from the nearest edge of a commercial or industrial building or activity."[2] Leonard Barr, chief of Department's

---

[1] Unless otherwise indicated, all section references are to the Business and Professions Code.

[2] In more detail, Wesley K. Nichols, highway outdoor advertising inspector of Department, made the following declarations bringing the displays within the Act's prohibitions, and excluding the signs from exceptions contained in the Act:

"2. I have personally inspected and viewed the outdoor advertising displays identified in . . . Nos. 3979 and 14230, and I have determined that each of said displays is located adjacent to Interstate Highway 15 east of Barstow, and that each of said displays is located within 660 feet of the edge of the right of way of, and the copy is visible from, Interstate Route 15, an Interstate Highway [see §§ 5405, 5410]. I have also determined that each of said outdoor advertising displays is not located within 1,000 feet from the nearest edge of a commercial or industrial building or activity [§§ 5205, 5407, 5408].

" . . .

"5. On November 7, 1967, and at all times thereafter, the outdoor advertising displays identified in Application for State Outdoor Advertising Permit Nos. 3979 and 14230 did not advertise the sale or the lease of the property on which either of said displays was

outdoor advertising section, declared permit No. 3979 was originally granted November 22, 1966, and permit No. 14230 was originally granted March 8, 1968. Mr. Barr attached copies of these permits to his declaration, and each permit recites it expires December 31. Permit No. 3979 says September 1, 1966, was the date of installation of the display to which it pertains and permit No. 14230 says July 20, 1967, was the date of installation of the display to which it pertains.

A motion for summary judgment as to the remaining two displays (permit Nos. 14226 and 14231), made on very similar declarations, was denied on January 2, 1973. Mr. Barr's declaration in support of the summary judgment motion establishes without contradiction the permits for all four displays were canceled as of July 1, 1970, and no renewal fees were paid in 1971 or 1972.

The trial of the cause on the remaining two signs (permit Nos. 14226 and 14231) was held on July 13, 1973. On November 20, 1973, after considering briefs and arguments of counsel and amici curiae, the trial court held the Act requires removal of the two displays in Riverside County without compensation and thus is unconstitutional as a denial of equal protection of the laws.[3] These displays, identified by permit Nos. 14226 and 14231, respectively, were first installed on Interstate Route 10 and Interstate Route 15 in 1957 and 1967 and were originally granted permits on August 24, 1966, and August 2, 1968. The trial court found these permits were issued retroactively to the first of January 1966 and 1968, respectively. It concluded the display under permit No. 14226 was lawfully in existence on and after January 1, 1966, and the display under permit No. 14231 was lawfully in existence on and after January 1, 1968.

At the outset, we must point out the trial court tried this case before most of the decisions we cite in this opinion were published. A trial judge works under a decided handicap when he has not had the benefit of an appellate court's wisdom in such matters.

There is no issue in this case concerning the fact that as of November 7, 1967, all of the displays were located within 660 feet from the edge of

---

located, nor did either of said displays advertise a business conducted, or services rendered, or the goods produced or sold upon the property upon which each of said outdoor advertising displays was located [§ 5405(a)(2) and (3)]."

[3]The trial court's conclusion of November 20, 1973, is entered in the minutes of that date. A formal written judgment, however, was not signed and entered until August 20, 1974.

the right-of-way of, and the copy is visible from, an interstate highway, thus bringing the displays within the general prohibition of section 5405.[4] Having this status, the displays were subject to the amortization provision of section 5410 which, generally, permits displays of this description to remain in existence either until July 1, 1970 if the display was "lawfully maintained in existence" on November 8, 1967[5] but not then in conformity with article 7 of the Act, or until the end of the fifth year after the display becomes nonconforming if the display was lawful when erected but did not, on January 1, 1968, or any time after that date, conform to article 7 of the Act.[6]

The Department's position is none of the displays conformed to Article 7 of the Act on November 8, 1967, or any time after that date, and they were required to be removed by July 1, 1970.

Desert disputes this position with respect to the displays under permit Nos. 3979 and 14230 to which the summary judgment relates.[7] Desert relies on sections 5407 and 5408 which contain an exception to the general prohibition of section 5405. Under sections 5407 and 5408 certain billboard displays may be maintained even in the proscribed area if they are located in a "business area," i.e., "an area within 1,000 feet, measured in each direction, from the nearest edge of a commercial or industrial building or activity and which is zoned under authority of state

---

[4]Section 5405 provides, in part: "[N]o advertising display shall be placed or maintained within 660 feet from the edge of the right-of-way of, and the copy of which is visible from, any interstate or primary highway, and no advertising display shall be placed or maintained beyond 660 feet from the edge of the right-of-way if the advertising display is designed to be viewed primarily by persons traveling on any interstate or primary highway."

[5]November 8, 1967, was the effective date of the California statutes bearing similar text but different section numbers, enacted in response to the Federal Highway Beautification Act of 1965 (23 U.S.C.A. § 131, eff. Oct. 22, 1965; and see Stats. 1967, ch. 1408; § 5288.2a).

[6]Section 5410 provides: "Any advertising display located within 660 feet of the edge of the right-of-way of, and the copy of which is visible from, any penalty segment, or any bonus segment described in Section 5406 which display was lawfully maintained in existence on the effective date of this section [11/8/67] but which was not on that date in conformity with the provisions of this article, may be maintained, and shall not be required to be removed until July 1, 1970. Any other sign which is lawful when erected, but which does not on January 1, 1968, or any time thereafter, conform to the provisions of this article, may be maintained, and shall not be required to be removed, until the end of the fifth year after it becomes nonconforming; provided that this section shall not apply to advertising displays adjacent to a landscaped freeway."

[7]Desert does not contest the trial court's finding neither display under permit Nos. 14226 and 14231 was located in a business area.

law primarily to permit industrial or commercial activities or an unzoned commercial or industrial area." (§ 5205.)

Section 5407 provides: "The provisions of Sections 5226 and 5405 shall not apply to penalty segments which are located, or which are to be located, in business areas and which comply with Section 5408, except that Sections 5226 and 5405 shall apply to unzoned commercial or industrial areas in which the commercial or industrial activity ceases and is removed or permanently converted to other than a commercial or industrial activity, and displays in such areas shall be removed not later than five years following the cessation, removal, or conversion of the commercial or industrial activity."

Thus, if a display is in a business area and it meets standards set out in section 5408 (otherwise not pertinent here) it is not subject to removal under the Act unless it is in an unzoned commercial or industrial area where the commercial or industrial activity ceases and is removed or permanently converted, as described, in which case the display may remain for five years after the cessation, removal or conversion.

There is a conflict in the declarations pertaining to the factual question whether the displays under permit Nos. 3979 and 14230 were located in a business area. If a business area location is involved, the trial court must ascertain the period of time the business area location existed. The Department's declaration states as of September 25, 1972, over four months *after* the action was commenced, each display "is not located" in a business area. Desert, on the other hand, has filed a declaration stating the displays were located in a business area *within five years before* the complaint was filed. ■ While vague as to the period of time the business area location existed, Desert's declaration resisting the motion for summary judgment is to be liberally construed and the Department, as moving party, has the burden of showing it is entitled to judgment (*People* ex rel. *Dept. of Transportation* v. *Hadley Fruit Orchards, Inc.,* 59 Cal.App.3d 49, 57 [130 Cal.Rptr. 287]). This the Department has not done.

■ The fact and date of a display's location in a business area are vitally important to the questions of whether any removal of the display is appropriate, and the length of time it is entitled to be maintained (§ 5407). A display for which a permit has been issued (§ 5350) and which is located in a business area as provided in section 5407 must be viewed as "lawfully maintained in existence" or "lawfully in existence" under any reasonable definition of those phrases.

These factors of business area location and period of existence of that area are also important in determining whether there is a statutory right to compensation, for this right exists as to each removal ordered on or after November 8, 1967, of any of the following advertising displays:

(a) Those "lawfully in existence" on October 22, 1965;

(b) Those on real property adjoining a highway made an interstate highway or primary highway between October 21, 1965 and January 1, 1968, which were lawfully in existence when the highway was so classified; and

(c) Those lawfully in existence on, or lawfully erected on or after, January 1, 1968 (§ 5412; 23 U.S.C.A. § 131(g) (Pub. L. No. 89-285, 79 Stats. 1028, eff. Oct. 22, 1965)).

A display (1) having a permit issued by the Department and (2) being located in a business area, thus immunizing it from removal, must be deemed "lawfully in existence" whenever those two conditions coexist. If, for example, the date when those conditions coexist is January 1, 1968, statutory compensation under section 5412, subdivision (c), would be available. This result could arise from construing permits issued after the first of the year as having retroactive effect to the first day of the year as was done by the court with respect to display permit number 14231 issued August 2, 1968, with payment of the applicable penalty (see §§ 5358 and 5360).

In any event, Code of Civil Procedure section 437c does not permit granting a summary judgment if there is a triable issue as to any material fact. ▇▇▇ As we have seen, the fact and date of location of the displays within a business area are material factual issues in this case. Accordingly, the summary judgment pertaining to the displays under permit numbers 3979 and 14230 must be reversed.

▇▇▇ The Department must be upheld in its contention section 5412 does not deny equal protection of the law. Since the decision by the trial court in this case, our courts have declared the police power basis of the Act permits compensation for a display removal only to the extent permitted in the Legislature's exercise of that power. A concise statement of the constitutional basis of the Act is the following: ". . . . The forced removal of nonconforming outdoor advertising displays prescribed by the Outdoor Advertising Act is a valid exercise by the state of its police

power. (*People* ex rel. *Dept. Pub. Wks.* v. *Adco Advertisers,* 35 Cal.App. 3d 507, 512 . . . and authorities there cited.) ' "Regulations regarding and restrictions upon the use of property in an exercise of the police power for an authorized purpose, do not constitute the taking of property without compensation or give rise to constitutional cause for complaint." ' (*People* ex rel. *Dept. Pub. Wks.* v. *Adco Advertisers, supra,* and authorities there cited.) Moreover, nonconforming outdoor advertising displays are, as previously noted, declared by the Act to be public nuisances subject to removal by any public employee. (§ 5461 [formerly § 5311 (Stats. 1939, ch. 32, § 1, p. 338)].) The abatement of a public nuisance pursuant to a reasonable exercise of the police power does not require the payment of compensation at all. (Cf. *People* ex rel. *Dept. Pub. Wks.* v. *Adco Advertisers, supra,* 35 Cal.App.3d at p. 513; also cf. *Miller* v. *Schoene,* 276 U.S. 272, 277, 279 . . .; *O'Hara* v. *L. A. County Flood etc. Dist.,* 19 Cal. 2d 61, 63 . . . ." (*People* ex rel. *Dept. of Transportation* v. *Hadley Fruit Orchards, Inc., supra,* 59 Cal.App.3d 49, 53.)

Section 5412, the applicable section pertaining to compensation in this case, demonstrates rather clearly the paramount legislative purpose in providing for selected compensation on removal of displays was simply to comply with federal requirements in order to avoid loss of federal highway funds.[8] Section 5412, as it read when this case arose and was decided below, made specific reference to the federal law in its opening and closing paragraph. In its entirety the section read as follows:

"5412. *Each removal* ordered by the director, on or after November 8, 1967, *of any of the following advertising displays* which is not as of that date in conformity with the provisions of this article shall be deemed a

---

[8]Undoubtedly the paramount legislative purpose prompting the California Legislature to enact the Outdoor Advertising Act was its concern not to lose California's share of federal highway funds and not to incur any penalty as a result of noncompliance with the Federal Highway Beautification Act (23 U.S.C. § 131 et seq.). Under the Act a state must enact laws providing "effective control" of billboards or be subject to a penalty of 10 percent of its allocated federal highway funds during each year of noncompliance (23 U.S.C. § 131(b)). Section 131(g) of the Act provides that just compensation shall be paid upon removal of any outdoor advertising sign, display, or device lawfully erected under state laws. Section 131(b)'s requirement that states provide "effective control" undoubtedly includes section 131(g)'s mandate for payment of "just compensation." (See 55 Ops.Cal.Atty.Gen. 1.) The removal of signs in this category without payment of compensation might well subject the State of California to the loss of 10 percent of the funds allocated by the federal government for highway construction purposes.

removal under Section 5410 and *shall be deemed to constitute a taking, within the meaning of the Highway Beautification Act of 1965, subdivision (g) of Section 131 of Title 23 of the United States Code, as in effect October 22, 1965,* of all right, title, and interest, including any leasehold interest, of the owner of the advertising display and of the right of the owner of the real property on which the advertising display is located to erect and maintain such advertising display thereon:

"(a) Advertising displays lawfully in existence on October 22, 1965.

"(b) Advertising displays on real property adjoining a highway made an interstate highway or a primary highway between October 21, 1965, and January 1, 1968, which were lawfully in existence on the date the highway was so classified.

"(c) Signs lawfully in existence on, or lawfully erected on or after, January 1, 1968.

"If federal law requires the states to pay just compensation with regard to the removal, on or after July 1, 1970, or the end of the fifth year after an advertising display becomes nonconforming, as the case may be, of such advertising displays, owners of such advertising displays which are removed pursuant to this article or owners of the land upon which such displays are located, or both, whichever way the federal law is interpreted, shall be paid just compensation. *The sole intent of the Legislature in enacting this paragraph is to comply with federal law,* and *it is otherwise not the intent of the Legislature to in any manner relinquish any of its powers relating to the removal of advertising displays under the police power.*" (Italics added.)

█ Though limited as an expression of intent in enacting only the last paragraph of section 5412, the last sentence can be viewed as indicative of the Legislature's purpose to use its police power and not its power of eminent domain, requiring removal of displays without compensation except to the extent required to avoid the loss of federal highway funds. This view is fortified not only by the close resemblance to the federal law of the compensation provisions of subdivisions (a), (b) and (c) of section 5412[9] but also by the version of section 5412 in effect

---

[9]23 United States Code Annotated section 131(g), as effective from October 22, 1965 to January 4, 1976, provided in part:

"(g) Just compensation shall be paid upon the removal of the following outdoor advertising signs, displays, and devices—

"(1) those lawfully in existence on the date of enactment of this subsection,

since January 1, 1976, which reads: "5412. If federal law requires the states to pay just compensation with regard to the removal of any advertising display, the owner or owners of such advertising display and the owner or owners of the land upon which such display is located, shall be paid just compensation. *The sole intent of the Legislature in enacting this section is to comply with federal law, and it is otherwise not the intent of the Legislature to in any manner relinquish any of its powers relating to the removal of advertising displays under the police power.*" (Italics added; Stats. 1975, ch. 1074.)

■ The Act deals with an area of purely economic regulation to which, for purposes of the equal protection clause of the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) and article IV, section 16 of the California Constitution, we apply a presumption of constitutionality and require merely that the distinctions drawn by the challenged statute bear some rational relationship to a conceivable legitimate state purpose (see *Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1, 15-16 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]). As we have seen, the classifications prescribed in section 5412 for purposes of determining what signs are compensable upon removal starts from a base point of zero compensability under the police power of the state to rid itself of public nuisances (*People* ex rel. *Dept. of Transportation* v. *Hadley Fruit Orchards, Inc., supra,* 59 Cal.App.3d 49, 53). For a purpose as universally legitimate as showing up to do a day's work in order not to lose a paycheck the Legislature has adopted the federal scheme of compensability in order not to lose federal highway funds. This presumptively valid state legislation has a rational basis, notwithstanding there may have been a compensation gap as to some displays between October 22, 1965, and January 1, 1968 (§ 5412, subd. (b)). Accordingly, the judgment insofar as concerns the displays under permit

---

"(2) those lawfully on any highway made a part of the interstate or primary system on or after the date of enactment of this subsection and before January 1, 1968, and

"(3) those lawfully erected on or after January 1, 1968.

"                                                                                             "

23 United States Code Annotated section 131(g) now reads:

"(g) Just compensation shall be paid upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law. The Federal share of such compensation shall be 75 per centum. Such compensation shall be paid for the following:

"(A) The taking from the owner of such sign, display, or device of all right, title, leasehold, and interest in such sign, display, or device; and

"(B) The taking from the owner of the real property on which the sign, display, or device is located, of the right to erect and maintain such signs, displays, and devices thereon."

Nos. 14226 and 14231 must be reversed with instructions to consider the question of compensability under the facts as determined, and applicable statutory and case law (see in addition to other authorities cited, *People* ex rel. *Dept. Pub. Wks.* v. *Golden Rule Church Assn.,* 49 Cal.App.3d 773 [122 Cal.Rptr. 596]).

Judgment reversed.

Brown (Gerald), P. J., and Staniforth, J., concurred.