Argued and submitted November 12, 1980,
rule held invalid May 26, 1981

VAN et al,
*Petitioners,*
*v.*
TRAVEL INFORMATION COUNCIL,
*Respondent.*

(CA 18553)
628 P2d 1217

Steven L. Philpott, Eugene, argued the cause for petitioners. On the brief were Mary A. Marshall and Armstrong & Philpott, P. C., Eugene.

William F. Gary, Deputy Solicitor General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and John R. McCulloch, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, Roberts, Judge, and Campbell, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a proceeding pursuant to ORS 183.400(1).[1] Petitioners[2] challenge that portion of an administrative rule adopted by the Travel Information Council which limits the right to erect temporary political signs on land adjacent to a state highway to a period of sixty days preceding an election. OAR 733-20-050(3)(a), *infra.* Petitioners claim that the rule violates the First Amendment and the equal protection clauses of both the Oregon and United States Constitutions. We agree and therefore declare the rule invalid. ORS 183.400(4).[3]

Before turning to an examination of petitioners' specific claims, it is necessary to understand the federal and state statutory scheme of which the challenged regulation is a part. OAR 733-20-050 was promulgated by the Oregon Travel Information Council pursuant to authority granted by the Oregon Motorist Information Act of 1971. ORS 377.700 to 377.840 and 377.992. That Act was enacted in response to the 1965 federal Highway Beautification Act. 23 USC § 131.

The federal Act is designed to persuade the states, by means of financial incentives, to use their police power to control the erection and maintenance of outdoor advertising structures adjacent to the Interstate and primary highway systems. Its purpose is "to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural

---

[1] ORS 183.400(1) provides, in pertinent part:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases * * *."

[2] The interest of these particular petitioners is not part of the record before us. We note petitioners' claimed interest as set forth in the brief. Petitioner Van claims an interest by virtue of his ownership of real property located adjacent to state Highway 99. Petitioner Fitzgerald was, at the time of the petition, seeking election as a representative from the State of Oregon to the United States Congress. He was unsuccessful.

[3] ORS 183.400(4) provides that this court is to declare a rule invalid if we find that the rule:

"(4) Violates constitutional provisions, exceeds the statutory authority of the agency or was adopted without compliance with applicable rulemaking procedures."

beauty." 23 USC § 131(a). The Act provides for the reduction of federal aid highway funds by an amount equal to 10 percent of the sum which would otherwise be apportioned on or after January 1, 1968, to any state which the Secretary of Transportation determines has not made provision for "effective control" of the erection and maintenance of outdoor advertising structures. 23 USC § 131(b).[4] "Effective control" means that signs, displays, or devices within the prescribed area shall be limited to

"(1) * * * directional and official signs and notices, which signs and notices shall include, but not be limited to, signs and notices pertaining to natural wonders, scenic and historical attractions, which are required or authorized by law, which shall conform to national standards hereby authorized to be promulgated by the Secretary hereunder, which standards shall contain provisions concerning lighting, size, number, and spacing of signs, and such other requirements as may be appropriate to implement this section, (2) signs, displays, and devices advertising the sale or lease of property upon which they are located, (3) signs, displays, and devices, including those which may be changed at reasonable intervals by electronic process or by remote control, advertising activities conducted on the property on which they are located, (4) signs lawfully in existence on October 22, 1965, determined by the State, subject to the approval of the Secretary, to be landmark signs, including signs on farm structures or natural surfaces, of historic or artistic significance the preservation of which would be consistent with the purposes of this section, and (5) signs, displays, and devices advertising the distribution of nonprofit organizations of free coffee to individuals traveling on the Interstate System or the primary system. For the purposes of this subsection, the term 'free coffee' shall include coffee for which a donation may be made but is not required." 23 USC § 131(c), as amended.

The Act further provides that, pursuant to an agreement between a state and the Secretary of Transportation, advertising structures may be erected and maintained within the proscribed distance in areas which are zoned industrial or commercial under authority of state law

---

[4] Originally, each state was to provide for "effective control" of advertising structures which were within 660 feet of the nearest edge of the right-of-way and visible from the main traveled portion of the Interstate and primary highway systems. In 1975, the area to be controlled was expanded to include signs beyond 660 feet and visible from the highway. 23 USC § 131(b), as amended.

or within unzoned commercial or industrial areas. States retain the full authority to zone areas for commercial or industrial purposes, and the actions of the states in this regard are to be accepted for purposes of the Act. Advertising structures erected pursuant to this section are subject to certain size, lighting and spacing requirements, which are to be determined by agreement between the states and the Secretary. 23 USC § 131(d), as amended.

The Act also provides for payment of just compensation to owners of outdoor advertising signs along the Interstate and primary system upon the removal of certain kinds of advertising structures, with the federal government providing 75 percent of the compensation. 23 USC § 131(g). There is a grace period of 5 years for the removal of structures previously lawfully erected. 23 USC § 131(e).

In compliance with the federal Act, the Oregon Motorist Information Act provides:

> "A person may not erect or maintain an outdoor advertising, direction or on-premises sign visible to the traveling public from a state highway, except where permitted outside the right-of-way of a state highway, * * *." ORS 377.715.

In order to erect, maintain or replace an outdoor advertising sign, an annual permit must first be obtained. ORS 377.725(1). An annual fee, dependent upon the size of the sign, must accompany each application for a permit. ORS 377.725(5). The Oregon Act, as mandated by the federal statutes, is designed to phase out outdoor advertising structures. Thus, no permit for the erection of any new outdoor advertising sign could be issued after June 12, 1975. ORS 377.725(4). All signs must comply with certain size, spacing, lighting, form, and other like requirements. See ORS 377.720, 377.727, 377.745, 377.750, 377.755. Signs must not interfere with a driver's view of official traffic signs or his or her view of traffic. ORS 377.720(b). The express purposes of the Oregon Act, insofar as relevant, are "to promote the public safety, to preserve the recreational value of public travel on state's highways, and to preserve the natural beauty and aesthetic features of such highways and adjacent areas * * *." ORS 377.705.

Certain signs are exempted by statute from the Oregon Act's permit and location requirements. These include signs permitted by the federal Act, such as directional and official traffic signs and signs advertising the sale or lease of property upon which they are located. Certain other temporary signs are also allowed, *e.g.,* temporary signs providing directions to places of business offering for sale agricultural products produced on the premises in question, signs maintained for not more than two weeks announcing an auction or a campaign, drive or event of a civic, philanthropic or educational organization; signs maintained for not more than six weeks by state and county fairs, rodeos, roundups and expositions; and temporary political signs erected or maintained by candidates or political committees on private property if the sign is removed within 30 days after the date of the election for which erected. The full text of the exemptions, ORS 377.735(1), is set out in the margin.[5]

---

[5] ORS 377.735(1) provides:

"(1) If applicable federal regulations are met, the permit requirements of ORS 377.700 to 377.840 do not apply to:

"(a) Signs with an area of not more than 260 square inches identifying motor bus stops or fare zone limits of common carriers.

"(b) Signs erected and maintained by a city showing the place and time of services or meetings of churches and civic organizations in the city; however, not more than two such signs may be erected and maintained that are readable by the traveling public proceeding in any one direction on any one highway.

"(c) Residential directional signs along highways other than fully controlled access highways; however, this paragraph does not apply if a professional, commercial or business activity is maintained at the location and the sign indicates its existence.

"(d) Official traffic control signs.

"(e) Signs of a governmental unit including but not limited to regulatory devices, legal notices or warnings.

"(f) Small signs displayed for the direction, instruction or convenience of the public, including signs which identify restrooms, freight entrances, posted areas or the like, with total surface area not exceeding four square feet.

"(g) Signs maintained for not more than two weeks announcing an auction or a campaign, drive or event of a civic, philanthropic or eductional organization.

"(h) Memorial signs or tablets.

"(2) The signs referred to in paragraphs (b), (c), (e), (g) to (L), (n) and (o) of subsection (1) of this section shall be subject to regulations adopted by the council as to the size, number and general location and as to time and procedure for erection and removal of temporary signs."

ORS 377.735(2) permits the Travel Information Council to adopt regulations as to the size, number and general location and as to the time and procedure for erection and removal of temporary signs.[6] Signs erected or maintained within a city more than 660 feet from the nearest edge of the right-of-way of a state highway are also exempt signs unless the sign is designed to be viewed primarily from the state highway. ORS 377.735(3). All exempted signs must still comply with any applicable federal regulations. ORS 377.735(1).

Pursuant to ORS 377.735(2), the Council has adopted regulations, including the one before us, relating to the erection and maintenance of exempt signs. These regulations vary according to the type of sign and pertain to location, size, form and, in some instances, number and time limit. *See* OAR 733-20-005 to 733-20-050. The following signs have no durational limits: church and civic organization signs, residential directional signs, signs of a governmental unit, memorial signs and tablets and church

"(i) Signs maintained for not more than six weeks by state and county fairs, rodeos, roundups and expositions.

"(j) Directional signs maintained temporarily to provide directions to places of business offering for sale agricultural products harvested or produced on the premises where the sale is taking place.

"(k) A sign advertising the sale of real estate by the owner or his agent and erected on the advertisied premises.

"(L) Signs warning of hazards or danger on the property upon which they are located, or warning against hunting, fishing or treaspassing upon such property.

"(m) Signs approved by the engineer and erected by a utility or common carrier for the purpose of notices necessary for the information, safety or direction of the public.

"(n) Church directional signs not to exceed six square feet in size, installed on private property.

"(o) Temporary political signs erected or maintained by candidates or political committees on private property, if the sign area does not exceed 32 square feet and if the sign is removed within 30 days after the date of the election for which erected."

[6] ORS 371.735(2) provides:

directional signs. Signs advertising the sale of property on which they are located and temporary directional signs advertising the sale of agricultural products are not limited as to time of erection but must be removed upon completion of the sale of the product. Other signs have more specific limitations: temporary civic signs must be removed within two weeks of installation, but not later than 24 hours after completion of the advertised event; exposition, fair and rodeo signs must be removed six weeks after erected but, not later than 24 hours after closing of the event; and temporary political signs may not be erected prior to 60 days preceding the date of the election to which they pertain and must be removed within 30 days after the election.

Petitioners challenge the 60 day limitation on temporary political signs as set forth in OAR 733-20-050(3)(a),[7] arguing that it violates their right to freedom of speech.[8] In this regard, petitioners argue that, because political speech is involved, erection of signs of this type is entitled to absolute protection, *i.e.,* it cannot be regulated at all. Secondly, they argue that, assuming some regulation is permissible, the regulatory limit in question here does not qualify as a valid "time, place and manner" restriction. Alternatively, they argue that, even if the rule is construed as a valid time, place and manner regulation, it cannot be sustained because the state has failed to demonstrate a sufficently compelling state interest to justify it. Petitioners also claim that the rule in question violates equal protection principles, because it impermissibly discriminates between temporary political signs and other types of temporary signs with respect to time limitations.

----

[7] OAR 733-20-045 provides, in pertinent part:

"* * * * *

"(3) Erection and Removal: Signs erected under this rule are subject to the following conditions:

"(a) Signs may not be erected prior to 60 days preceding the election date;

"(b) Signs must be removed within 30 days after election date;

"* * * * *."

[8] Contrary to the state's suggestion, petitioners do not also challenge the requirement that signs must be removed 30 days after the election.

The Council argues that its rule is not a prior restraint on speech which must be justified by a compelling state interest but is, rather, a reasonable regulation on the time, place and manner of speech. It argues that the governmental interest, along with other factors, can be weighed against the individual interest. It points to the state's interest in promoting highway safety and beauty and in receiving its full share of federal aid for highways. It notes that the rule is limited in application and argues that there are ample alternatives for communication by political candidates; thus, it argues, the rule does not impose an undue burden on First Amendment rights. It contends that petitioners' equal protection claim is unfounded because the time limits on political signs are reasonably calculated to further the general purposes of state and federal sign legislation and the difference in time restrictions for the different types of signs is a reasonable response to the practical requirements of the various forms of communications.

## 1. Petitioners' Claim of Absolute Protection for Political Speech

■ ■ Initially, we reject petitioners' claim that political speech enjoys absolute protection and cannot be regulated. It is true that political speech, as opposed to other types of speech, is afforded maximum protection under the First Amendment. *See New York Times Co. v. Sullivan,* 376 US 254, 270, 845 S Ct 710, 11 L Ed 2d 686 (1964); *Garrison v. Louisiana,* 379 US 64, 74-75, 85 S Ct 209, 13 L Ed 2d 125 (1964); *Monitor Patriot Co. v. Roy,* 401 US 265, 91 S Ct 621, 28 L Ed 2d 35 (1971); *John Donnelly & Sons v. Campbell,* 639 F2d 6 (1st Cir 1980); *Baldwin v. Redwood City,* 540 F2d 1360 (9th Cir 1976), *cert den* 431 US 913 (1977). However, not even the right of political expression is completely unfettered. The Supreme court has repeatedly recognized the constitutionality of reasonable "time, place and manner" restrictions on the exercise of free speech rights. *See e.g., Police Department of Chicago v. Mosley,* 408 US 92, 92 S Ct 2286, 33 L Ed 2d 212 (1972); *Grayned v. City of Rockford,* 408 US 104, 92 S Ct 2294, 33 L Ed 2d 222 (1972); *Cox v. Louisiana,* 379 US 536, 85 S Ct 453, 13 L Ed 2d 471 (1965); *Kovacs v. Cooper,* 336 US 77, 69 S Ct 448, 93 L Ed 513 (1949); *Cox v. New Hampshire,* 312 US 569, 61 S Ct

762, 85 L Ed 1049 (1941). The statutory and regulatory scheme before us does not absolutely prohibit the erection and maintenance of political campaign signs; it regulates the time, place and manner of their erection and maintenance. Therefore, we examine the regulation in question not as an absolute ban but as a time, place and manner restriction.

### 2. Time, Place and Manner Restriction

■ "Laws regulating time, place or manner of speech stand on a different footing from laws prohibiting speech altogether." *Linmark Associates, Inc. v. Willingboro,* 431 US 85, 97 S Ct 1614, 52 L Ed 2d 155 (1977). Reasonable restrictions relating to the time, place and manner in which the right to free speech is exercised are permissible if

"* * * they are justified without reference to the content of the regulated speech, they serve a significant governmental interest, and * * * in so doing, they leave open ample alternative channels for communication of information." *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council Inc.,* 425 US 748, 771, 96 S Ct 1817, 48 L Ed 2d 346 (1976).

In measuring the effect of the statute or regulation on free expression, "careful consideration must also be given to whether the challenged regulation is more inclusive or more burdensome than necessary to further the legitimate governmental purposes [it is designed to foster]." *Baldwin v. Redwood City, supra,* 540 F2d at 1367; *see also United States v. O'Brien,* 391 US 367, 377, 88 S Ct 1673, 20 L Ed 2d 672 (1968). First Amendment freedoms must be kept in a preferred position; a regulation can be no more restrictive than reasonably necessary to serve the governmental interest involved. *Brown v. Glines,* 444 US 348, 355, 100 S Ct 594, 62 L Ed 2d 540 (1980); *John Donnelly & Sons v. Campbell, supra,* 639 F2d at 8. Where First Amendment rights are involved, restrictions must be "narrowly drawn." *Central Hudson Gas v. Public Service Comm'n,* 447 US 557, 100 S Ct 2343, 65 L Ed 2d 341, 350 (1980); *Baldwin v. Redwood City, supra,* 540 F2d at 1567.

■ With these constitutional principles in mind, we turn to the regulation before us. We note first that the Oregon statute as a whole is not directed to content. Billboards are regulated, and in some cases banned altogether,

not because of the messages they convey but because the medium of communication is itself objectionable. *See John Donnelly & Sons v. Campbell, supra,* 639 F2d at 8; *Metromedia, Inc. v. City of San Diego,* 26 C3d 848, 164 Cal Rptr 510, 610 P2d 407 (1980), *prob juris noted,* 449 US 897, 101 S Ct 265 (1980). On the other hand, the exemptions from the erection, location and permit requirements are based on *content,* and political campaign signs are treated as exemptions. To the extent that such signs are treated better than other signs, however, the statute cannot be faulted on this ground.[9] Moreover, as one court has noted in its examination of a similar state statute, each of these exceptions reflects "an appropriate governmental interest." *John Donnelly & Sons v. Campbell, supra,* 539 F2d at 9.

▪ Like the exemptions, the regulations which implement the exemptions appear to be based upon content: how long an exempt sign may be maintained depends upon the message that sign seeks to convey. However, we need not decide if this distinction in the regulations based upon content is impermissible. Even if we assume that the regulation before us is a valid time, place and manner regulation and not an improper restriction on content, it cannot stand. Although the regulation seeks to further legitimate state interests, we conclude that these interests are insufficient to justify the significant restriction on political speech it imposes. Before outlining the reasons for our conclusion, we think an examination of the case law in this area and a closer look at the effect of the Oregon Act is helpful.

There are innumerable decisions examining state statutes and city ordinances regulating the erection and maintenance of billboards. A number of court decisions have upheld local and state regulations which prohibit the posting of off-premise signs and which have limited exceptions such as those in the statute before us. The stated interests justifying such broad bans on outdoor advertising structures are most often identified as traffic safety and aesthetics. Some courts have found aesthetics alone to be a sufficient basis for the restrictions. *See e.g., Metromedia,*

---

[9] The fact is, however, that temporary political signs do not enjoy a preferred position. *See* the equal protection discussion, *post.*

*Inc. v. City of San Diego, supra,* 26 Cal 3d 848; *State v. Lotze,* 92 Wash 2d 52, 593 P2d 811 (1979), *appeal dismissed* 444 US 921 (1979); *Markham Advertising Co. v. State,* 73 Wash 2d 405, 439 P2d 248 (1968), *appeal dismissed* 393 US 316 (1979); *Stuckey's Stores, Inc. v. O'Cheskey,* 93 NM 312, 600 P2d 258 (1979), *appeal dismissed* 446 US 930, 100 S Ct 2145 (1980); *Newman Signs, Inc. v. Hjelle,* 268 NW2d 741 (N. D. 1978), *appeal dismissed* 440 US 901 (1979); *Veterans of For. Wars, Etc. v. Steamboat Springs,* 575 P2d 835 (Colo 1978), *dismissed for want of substantial federal question,* 439 US 809 (1978); *Suffolk Outdoor Advertising Co., Inc. v. Hulse,* 43 NY2d 483, 402 NYS2d 368, 373 NE2d 263 (1977), *appeal dismissed* 439 US 808 (1978); *Donnelly Advertising Corp. v. City of Baltimore,* 279 Md 660, 370 A2d 1127 (1977); *John Donnelly & Sons, Inc. v. Outdoor Advertising Bd.,* 369 Mass 206, 339 NE2d 709 (1975); *E. B. Elliott Adv. Co. v. Metropolitan Dade County,* 425 F2d 1141 (5th Cir 1970); *United Advertising Corp. v. Borough of Raritan,* 11 NJ 144, 93 A2d 362 (1952); *see generally* 81 ALR3d 486-556 (1977).[10]

In most of these cases the petitioner's interest and the court's opinion are limited to the challenged regulation's effect on purely commercial speech. The major exception to this focus is the decision by the Washington Supreme Court in *State v. Lotze, supra.* In that case, the court specifically considered the prohibition against off-site advertising as it related to political speech. The court found that the state law, which sets out the requirements and exceptions of the federal Act and in effect prohibits political and public issue signs, did not violate the First Amendment to the federal Constitution. *State v. Lotze, supra,* 92 Wash 2d 52; *see also Donnelly Advertising Corp. v. City of Baltimore, supra,* 279 Md 660.

However, the majority of the court decisions on this latter, specific issue of interference with political

---

[10] Petitioners have failed to cite any billboard cases. The Council relies on *State v. Lotze,* 92 Wash 2d 52, 593 P2d 811 (1979), cert den 453 US 922 (1980), discussed *infra,* and *State ex rel Dept.of Transp. v. Pile,* 603 P2d 337 (Okla 1979). *The Council's reliance on the decision in Pile* is misplaced. In that case the court held that a statute prohibiting all billboards on rural byways did not include billboards used for purposes of non-commercial speech. The court reasoned that to read the act as including all billboards would raise serious First Amendment problems.

speech are contrary to *Lotze.* Regulations which prohibit all political and ideological signs in a given location, *e.g.,* in a city or on the state's highways, have been repeatedly found to be unconstitutional. *See, e.g., John Donnelly & Sons v. Campbell, supra; State v. Miller,* 83 NJ 402, 416 A2d 821 (1980); *Martin v. Wray,* 413 F Supp 1131 (E. D. Wis 1979); *Aiona v. Pai,* 516 F 2d 892 (9th Cir 1975); *Ross v. Goshi,* 351 F Supp 949 (D Hawaii 1972); *Peltz v. City of South Euclid,* 11 Ohio St 2d 128, 228 NE2d 320 (1967); *Norate Corporation v. Zoning Board of Adjustment,* 417 Pa 397, 207 A2d 890 (1965); *People v. Middlemark,* 100 Misc 2d 760, 420 NYS2d 151 (1979).

Like the federal Act and the state statutes and ordinances examined in the cases noted above, the Oregon Act attempts to eliminate outdoor advertising from a particular area, *viz.,* the state and federal highway system. Commercial signs are banned unless they involve the sale of the property on which they are located or are temporary directional signs relating to the sale of agricultural products on the property on which they were produced. These are so called "on-premises" signs. The Act, as noted, also exempts official and motorist informational signs and certain temporary signs advertising civic functions, state and county events and political signs. The political sign exemption is limited. It applies only to political signs erected or maintained by candidates or political committees and only to signs related to current political campaigns. There is no provision allowing persons other than candidates or committees to erect campaign signs in support of the candidate of their choice. Further, the exemption does not apply to other political issues or ideological speech which is not the subject of an election. Messages such as "Support E.R.A.," "No Nukes" or "Guns don't kill people—people kill people" are banned altogether from the highways.

The regulation in question here narrows the political sign exemption even further than does the statute. By its provisions, such campaign signs as are permitted can only be erected for 60 days preceding an election. This regulation is, in the context of the larger statutory scheme, a significant restriction on political speech.

Unlike many of the cases discussed above, we are not here asked to decide the constitutionality of the Oregon

Motorist Information Act as a whole. Petitioners challenge only the 60 day limitation on the erection of political signs. They do not take issue with the banning of ideological signs altogether, or the fact that only candidates and committees can erect political campaign signs. But *see John Donnelly & Sons v. Campbell, supra,* 639 F2d 6. We turn now to the limited inquiry before us.

The stated purposes of the Oregon Act are three: highway safety, aesthetics and preservation of the state's recreational value.[11] We have no doubt that these are legitimate state interests. We find it difficult, however, to find a relationship between the 60 day limitation on the erection of political signs and public safety. Once political signs are allowed on a temporary basis, it is difficult to imagine how prohibiting political signs at other times significantly promotes highway safety. It is apparent that other restrictions on outdoor advertising structures such as spacing, size and lighting requirements are more closely related to the promotion of safe driving conditions. Limiting the time period during which political signs may be maintained is more closely related to considerations of aesthetics and preservation of the recreational value of Oregon's highways. These are, standing alone, valid state interests justifying the exercise of the state's police power. *See Oregon City v. Hartke,* 240 Or 35, 400 P2d 255 (1965).[12] Although we recognize the relationship between aesthetic and recreational considerations and restricting the period of time during which signs will be visible from the highways, as we have already stated, we do not think that these interests are sufficient to justify the significant restriction on political speech imposed by the regulation. *See John Donnelly & Sons v. Campbell, supra,* 639 F2d at 12.

[11] The Council also contends that the state has an interest in receiving its full share of federal aid for the state's highways and that this interest is advanced by the questioned regulation. We have no doubt that the state has such an interest. However, the state's financial interest does not outweigh the constitutional interests asserted by the petitioners here.

[12] In *Oregon City v. Hartke, supra,* the court upheld an ordinance excluding automobile wrecking yards from the city on aesthetic grounds alone. Many of the decisions noted above have relied on the court's decision in *Hartke* finding aesthetics to be a sufficient basis for the regulation and/or prohibition of off-premise billboards.

The bases for our conclusion are threefold. Initially, we find the 60 day limitation unnecessarily restrictive in light of the important First Amendment interests involved and the state's interest sought to be advanced. We agree with the analysis of the court in *John Donnelly & Sons v. Campbell, supra,* where the First Circuit held a Maine statute which prohibited most off-premises billboards unconstitutional because of its significant impact on ideological speech. The court noted that signs erected for an election, primary or referendum within three weeks of the event were exempted from the Act's operation. The court held, however, that the exception did not go far enough—it not only failed to provide for other types of public issue signs but also limited the period of time during which the election signs could be maintained. As the court stated, "* * * we doubt that three weeks is enough time to publicize a campaign, particularly for the little known or unpopular candidate, or cause, with the greatest need for exposure." *Id.,* at 15.

It is true that the time limitation before us is more than twice as long as the one involved in the *Donnelly* case. However, the same reasoning applies. The process of acquainting the public with new candidates is a slow one. Two months is simply not enough time to allow a relatively unknown person to achieve household name familiarity. When Oregon's particular election scheme is considered, the unreasonable nature of the 60 day limitation becomes even more apparent: In Oregon, while primary elections are held in May, the general election is held the following November—almost six months later. *See* ORS 254.056.

Secondly, although we recognize that alternative means of communication, *i.e.,* means other than billboards along the state's highways, are available to political candidates, we find these to be inadequate. A persuasive decision in this area is that of the Ninth Circuit in *Baldwin v. Redwood City, supra,* 540 F2d 1360. The city ordinance under scrutiny in that case provided for a permit system and contained detailed regulations governing the erection and maintenance of all types of outdoor signs within the city. Included were temporary signs which were limited to a period of 60 days before and 10 days after the event they

addressed. While exempted from various design and structural controls, temporary signs were subject to certain other regulations. Political campaign signs were included in the category of temporary signs. The court held that the ordinance's limit on the aggregate area of political signs on behalf of a single candidate or issue, its requirement that an application be filed before displaying temporary political signs and that a nonrefundable inspection fee be paid before displaying signs, its provision requiring payment of $5 refundable deposit before displaying signs, its ban on display of signs in residential areas of the city and its provision permitting summary removal of any temporary political campaign sign under certain conditions were all unconstitutional on First Amendment grounds.[13] In considering the availability of alternative channels of communication, the court stated:

"The existence of such alternatives is not alone enough to justify any regulation the city may desire to impose upon this means of expression. It is, however, a factor to be considered in striking the appropriate accommodation between free speech and legitimate governmental interests.

"Its significance depends upon the nature of the First Amendment interest involved in the particular case, the purpose and the extent of the restriction imposed, and the availability of less restrictive means of accomplishing the legitimate governmental objective. As we have said, the First Amendment interests involved in the display of political posters adjacent to public thoroughfares are substantial. Moreover, means of political communication are not entirely fungible, political posters have unique advantages. Their use may be localized to a degree that radio and newspaper advertising may not. With exception of handbills, they are the least expensive means by which a candidate may achieve name recognition among voters in a local elections." *Id.,* at 1368.

This view was reiterated by the court in *John Donnelly & Sons v. Campbell, supra.* In that case the court noted that outdoor advertising is a "far less expensive means of communication than radio, television, newspaper or magazines" and that ideological and political speech

---

[13] The Redwood City ordinance's 60 day limit on the maintenance of political signs was not challenged or considered by the court in *Baldwin.*

significantly depends upon outdoor advertising. 639 F2d at 16. As the court stated, "Signs which can be cheaply erected particularly permit advancing poorly financed causes of little people." *Ibid.,* quoting from *Martin v. Struthers,* 319 US 141, 146, 63 S Ct 862, 87 L Ed 1313 (1943).

Finally, we note that, although political signs are treated by the statute and regulation in question here better than many other types of signs, they are, by virtue of the regulation before us, treated worse than some. In addition to official and informational signs, certain on-premise commercial signs, identified above, are not limited as to duration; the only limitation is that they must be removed after the sale they are advertising. Thus, the law may impact more heavily on the sale of ideas than on the sale of squash. Faced with a similar provision in the Maine statute, the court in *John Donnelly & Sons v. Campbell, supra,* concluded, and we agree, that such a result is "a peculiar inversion of First Amendment values." *Id.,* at 15-16.

On the basis of the foregoing analysis, we conclude that OAR 733-20-050(3)(a) infringes upon First Amendment rights by impermissibly restricting the scope of political speech through its limitations on the time for erection of political signs.

### 3. Equal Protection Considerations

Although not necessary to our decision in this case, we wish to add one further observation concerning the regulation we are reviewing. The distinction in the regulation between political and commerical speech raises Equal Protection as well as First Amendment issues. In *Orazio v. Town of N. Hempstead,* 426 F Supp 1144 (ED NY 1977), the court was faced with a town ordinance that limited the erection of political wall signs to six weeks preceding an election. The ordinance placed no time limits on nonpolitical wall signs which advertised the nature of the business conducted on the premises. The court found that the ordinance violated both the First Amendment and the Equal Protection Clause. While recognizing the town's concern for aesthetic values, the court found the distinction between types of signs was not justified as political wall signs, in the court's view, were not inherently more obnoxious or ugly than other wall signs. In response to the

defendant's claim that political signs are by nature temporary the court stated:

> "Whether temporary or not, politics is important business, and it is difficult to perceive what governmental interest is served by placing time limits on the public's opportunity to be informed about candidates who are seeking public office or organizations which support them." *Id.,* at 1149.

We agree.[14]

■ We conclude that the 60 day limitation on the maintenance of political campaign signs prior to an election is unconstitutional. It violates both the First Amendment and the Equal Protection clause of the United States Constitution. The regulation is unduly restrictive and burdensome when the significant First Amendment interests involved are balanced against interests of the state it seeks to advance. Although alternative modes of communication are available, they are inadequate when compared to the manner of expression (billboards), and the location (the state highway system). Finally, the regulation treats certain commerical signs more favorably than political signs, a distinction not reasonably related to any appropriate governmental interest.[15]

We are not unmindful of this state's interest in maintaining the beauty and recreational attractiveness of all of our resources, including the state highways. We recognize that billboards are viewed by many as a blight upon the land. However, this is a case involving significant First Amendment rights. As the court in *Baldwin v. Redwood City, supra,* stated:

---

[14] Another decision which specifically discussed a time limit on the maintenance of political signs is *Ross v. Goshi, supra.* In that case, political campaign signs were exempted from certain erection and maintenance requirements for the 60 day period preceding an election. The court found the time limit reasonable. However, the court noted that political signs were permitted at any time before the 60 day period as long as they conformed to the restrictions placed on other outdoor signs. The court in *Orazio* distinguished the case before it from *Ross* on this basis.

[15] Normally, we would consider Oregon constitutional issues first. Here, however, the Council argues in part that it is compelled to the enactment of OAR 733-20-050(3)(a) by provision of the Federal Highway Beautification Act. Because we consider analysis under the federal Constitution dispositive, and in order to avoid a needless analysis of the applicability of the Supremacy Clause in this context, we have confined our discussion and holding to questions raised under it.

"Communication by signs and posters is virtually pure speech. The element of conduct in a sign posted on behalf of an issue or candidate during a campaign is minimal. Baldwin and Cannon seek to use posters in political campaigning, and 'the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.' *Monitor Patriot Co. v. Roy,* 401 US 265, 272, 91 S Ct 621, 28 L Ed 2d 35 (1971). Posters and signs are erected adjacent to 'traditional first amendment forums, such as public sidewalks and other thoroughfares,' *Aiona v. Pai,* 516 F2d 892, 893 (9th Cir 1975) where 'expressive activity may be restricted only for weighty reasons.' *Grayned v. City of Rockford,* 408 US 104, 115, 92 S Ct 1194, 2303, 33 L Ed 2d 222 (1972). * * * The regulations * * * directly infringe the First Amendment rights of individuals who want to express political opinion in a traditional First Amendment forum." 540 F2d at 1366.

For the reasons stated above, we hold that OAR 733-20-050(3)(a) is unconstitutional and therefore invalid.