TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-1108 |
| of | : | |
| | : | June 20, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE CHARLES S. POOCHIGIAN, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

Does the Outdoor Advertising Act (Bus. & Prof. Code, §§ 5200-5486) apply to the posting of a sign on private property adjacent to a highway that expresses the property owner's opinion concerning a state or federal public official?

CONCLUSION

The Outdoor Advertising Act (Bus. & Prof. Code, § 5200-5486) does not apply to the posting of a sign on private property adjacent to a highway that expresses the property owner's opinion concerning a state or federal public official.

ANALYSIS

The Outdoor Advertising Act (Bus. & Prof. Code, §§ 5200-5486; "Act")[1] regulates advertising displays, such as billboards, in unincorporated areas of the state and in areas adjacent to interstate and primary highways. (§ 5271.)[2] The Act is designed to regulate outdoor advertising in a

_____

[1]  All references hereafter to the Business and Professions Code are by section number only.

[2]  Although the Act expressly occupies the whole field of outdoor advertising regulation, it does not prohibit the enforcement of the Act by a county or the passage by a county of reasonable land use or zoning regulations affecting the

manner consistent with the federal Highway Beautification Act of 1965 (23 U.S.C. § 131). (See § 5214; Stats. 1967, ch. 1408, § 1.) The Act provides minimum standards "designed to accommodate the federal statute in order to qualify for federal aid." (*Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 303; see *People* ex rel. *Dept. of Transportation* v. *Harris* (1982) 128 Cal.App.3d 264, 267; *People* ex rel. *Dept. of Transportation* v. *Desert Outdoor Advertising, Inc.* (1977) 68 Cal.App.3d 440, 448-450.) The State Department of Transportation is responsible for administering the Act, including the issuance of licenses to those engaged in the business of erecting and maintaining advertising displays and the issuance of permits for displays covered by the Act's requirements. (§ 5250.)[3]

The basic prohibition contained in the Act is that no advertising display may be placed or maintained within 660 feet from the right-of-way of an interstate or primary highway if the advertising copy would be visible from the highway. (§ 5405.) Separate rules apply to advertising displays placed or maintained on property adjacent to a section of a freeway which has been landscaped. (§ 5440.) Additional rules pertain to the posting of signs along "scenic highways." (See §§ 5440.1, 5442.5.)

Temporary political signs may be placed in any of the aforementioned restricted locations except within 660 feet of the edge of and visible from the right-of-way of a landscaped freeway. (§ 5405.3.) A temporary political sign is a sign which: (a) encourages a particular vote in a scheduled election; (b) is placed not sooner than 90 days prior to the scheduled election and is removed within 10 days after that election; (c) is no larger than 32 square feet; and (d) has had a statement of responsibility filed with the State Department of Transportation certifying a person who will be responsible for removing the sign and who will reimburse the department for any cost to remove it. (*Ibid*.)

We are asked to determine whether the Act applies to the posting of a sign on private property adjacent to a highway that expresses the property owner's opinion concerning a state or federal public official. For purposes of our analysis, we will assume that the sign does not qualify as a temporary political sign because it is not aimed at inducing a particular vote in a scheduled election. We will also assume that being "adjacent" to a highway means that the sign is within 660 feet from the edge of the right-of-way and is intended to be visible from such highway.

In determining the scope of the Act's provisions, we look to well-settled principles of statutory construction. As summarized by the Supreme Court in *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387:

---

placement of advertising displays (§ 5227), and provides that cities and counties may impose restrictions on advertising displays equal to or greater than those imposed by the Act (§ 5230).

[3] The department has issued detailed regulations (Cal. Code Regs., tit. 4, §§ 2240-2519) implementing the Act's provisions.

". . . [O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.  In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import . . . .  The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.  [Citations.]  Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.  [Citation.]  Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.  [Citation.]  A statute should be construed whenever possible so as to preserve its constitutionality.  [Citations.]"

Applying these principles of statutory interpretation, we note first that the proscription of section 5405 applies to "advertising displays."  Section 5202 defines such displays as "advertising structures" and "signs."  These terms are in turn defined by sections 5203 and 5221 respectively. "Advertising structure" means "a structure of any kind or character erected or maintained for outdoor advertising purposes, upon which any poster, bill, printing, painting or other advertisement of any kind whatsoever may be placed, including statuary, for advertising purposes."  (§ 5203.)  "Sign" means "any card, cloth, paper, metal, painted or wooden sign of any character placed for outdoor advertising purposes, on or to the ground or any tree, wall, bush, rock, fence, building, structure or thing, either privately or publicly owned, other than an advertising structure."  (§ 5221.)

With these definitions in mind, we turn to the purposes of the Act as expressed in section 5226:

"The regulation of advertising displays adjacent to any interstate highway or primary highway as provided in Section 5405 is hereby declared to be necessary to promote the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in such highways, to preserve the scenic beauty of lands bordering on such highways, and to insure that information in the specific interest of the traveling public is presented safely and effectively, recognizing that a reasonable freedom to advertise is necessary to attain such objectives.  The Legislature finds:

"(a)  Outdoor advertising is a legitimate commercial use of property adjacent to roads and highways.

"(b)  Outdoor advertising is an integral part of the business and marketing function, and an established segment of the national economy, and should be allowed to exist in business areas, subject to reasonable controls in the public interest."

The references to the "commercial use of property" and "integral part of the business and marketing function, and an established segment of the national economy" in section 5226 support the conclusion that the Act is concerned with commercial advertising and not with the expression of a property owner's political philosophy.

In this context, then, we believe that the term "advertise" may be defined as "to call public attention to [especially] by emphasizing desirable qualities so as to arouse a desire to buy or patronize ([advertize] a breakfast food) (spent a fortune *advertising* their filter-tip cigarettes)." (Webster's Third New Internat. Dict. (1971) p. 31.)  Such common definition would exclude the expression of a political belief by a property owner whether displayed by signs or otherwise.  (See 74 Ops.Cal.Atty.Gen. 122, 124 (1991).)

Our construction of the Act's provisions is consistent with the Court of Appeal's declaration in *People* ex rel. *Dept. of Transportation* v. *Desert Outdoor Advertising, Inc., supra,* 68 Cal.App.3d at 450, that "[t]he Act deals with an area of purely economic regulation . . . ."  It is also consistent with the Legislature's placement of the Act in the Business and Professions Code rather than, for example, the Civil Code or the Streets and Highways Code.

This construction of the Act also serves to preserve its constitutionality.  In *Metromedia, Inc.* v. *City of Los Angeles* (1982) 33 Cal.3d 180, 186, the court observed:

> ". . . Judicial doctrine governing construction of a law to avoid unconstitutionality is well settled.  If `the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.' [Citations.]  Consequently, `[i]f feasible within bounds set by their words and purposes, statutes should be construed to preserve their constitutionality.' [Citation.]"

If we construed the Act to cover the expression of a political belief, it would raise serious doubts as to whether its provisions were constitutional under the First Amendment of the United States Constitution ("Congress shall make no law . . . abridging the freedom of speech or press . . .") and subdivision (a) of section 2 of article I of the California Constitution ("A law may not restrain or abridge liberty of speech or press").  (See *City of Ladue* v. *Gilleo* (1994) 512 U.S. ___ [129 L.Ed.2d 36]; *Boos* v. *Barry* (1988) 485 U.S. 312; *Metromedia, Inc.* v. *City of San Diego* (1981) 453 U.S. 490; *Whitton* v. *City of Gladstone* (8th Cir. 1995) 54 F.3d 1400; *National Advertising Co.* v. *City of Orange* (9th Cir. 1988) 861 F.2d 246; *John Donnelly & Sons* v. *Campbell* (1980) 639 F.2d 6.)  For example, with its exemptions for various types of commercial advertising under specified conditions (see, e.g., §§ 5405, 5442), the Act would treat noncommercial signs in a worse manner than commercial signs, resulting in "a peculiar inversion of First Amendment values."  (*John Donnelly & Sons* v. *Campbell, supra,* 639 F.2d at 15-16; accord, *Van* v. *Travel Information Council* (1981) 52 Or.App. 399 [628 P.2d 1217, 1227]; see also *Metromedia, Inc.* v. *City of San Diego, supra,* 453 U.S. at 512-514.)

In *State* ex rel. *Dept. of Transp.* v. *Pile* (Okla. 1979) 603 P.2d 337, a billboard was posted within 660 feet of a federally funded highway and was alleged to be in violation of an Oklahoma outdoor advertising statute.  Erected by an individual property owner, the sign stated:  "Get Us Out of the United Nations."  Under the state statute, outdoor advertising signs included "any outdoor sign, display, device, notice, figure, painting, drawing, message, placard, poster, billboard or other thing which is designed, intended, or used to advertise or inform . . . ."  The court noted that the "dictionary

definitions [of `advertising'] clearly refer to what is generally thought of as commercial advertising." (*Id.*, at p. 339.) After analyzing applicable First Amendment principles, the court concluded:

". . . If the statutory definition of sign, outdoor advertising, or outdoor advertising device found in [the state statute] including `. . ., or [any] other thing, which is designed, intended or used to advertise or inform . . .' was held to cover non-commercial speech, that interpretation would raise, at least, serious doubts as to its constitutionality. The statute is easily susceptible to the interpretation that it does not cover noncommercial speech. This court is bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision. *U.S.* v. *Harriss*, 347 U.S. 612, (1954)." (*Id.*, at p. 343.)

In 70 Ops.Cal.Atty.Gen. 296 (1987), we considered whether the prohibition of Penal Code section 556 applied to political advertising. The statute provided:

"It is a misdemeanor for any person to place or maintain, or cause to be placed or maintained without lawful permission upon any property of the State, or of a city or of a county, any sign, picture, transparency, advertisement, or mechanical device which is used for the purpose of advertising or which advertises or brings to notice any person, article of merchandise, business or profession, or anything that is to be or has been sold, bartered, or given away."

We concluded that only commercial advertising was prohibited under the statute, observing:

". . . the First Amendment enjoys a preferred position in our law. `[I]t can hardly be doubted that the constitutional guarantee [of free speech] has its fullest and most urgent application precisely to the conduct of campaigns for political office' (*Monitor Patriot Co.* v. *Roy* (1971) 401 U.S. 265, 272) so `that candidates have the unfettered opportunity to make views known' (*Buckley* v. *Valeo* (1976) 424 U.S. 1, 52-53.)

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . `it is our duty to uphold a statute unless its unconstitutionality clearly, positively, and unmistakenly appears; all presumptions and intendments favor its validity.' (*Mills* v. *Superior Court* (1986) 42 Cal.3d 951.). . . ." (*Id.*, at pp. 297-298.)

We recognize that in other contexts, the term "advertise" may cover advertisements of a political nature. (See, e.g., *Metromedia, Inc.* v. *City of San Diego*, *supra*, 32 Cal.3d at 188.) Our reading of the Act as a whole, however, convinces us that it was not intended to prohibit political expression. This is so even though the Act contains an exception for certain political campaign signs (§ 5405.3) noted above. It may well be that at the time section 5405.3 was enacted (Stats. 1979, ch. 1054, § 1), the Legislature believed that the Act generally applied to political campaign advertisements. The report of the Senate Transportation Committee dated May 9, 1979, for example, concerning the proposed legislation indicated such understanding ("Political signs are subject to the same constraints

of both state and federal law as other advertisements").[4]   However, "[t]he declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law. [Citation.]"   (*Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 52.)   The Act was first enacted in 1939 (Stats. 1939, ch. 32, § 1) and reenacted in 1970 in the same form (Stats. 1970, ch 991, § 2).[5]   The express references to the "commercial use of property" and "integral part of the business and marketing function, and an established segment of the national economy" were incorporated into the statutory language (Stats. 1967, ch. 1408, § 15) long before section 5405.3 was enacted.   Moreover, a stated purpose of section 5405.3's enactment was to clear up the confusion concerning whether the Act covered temporary political signs.   (See Stats. 1979, ch. 1054, § 2 ["There is no uniform enforcement of" the Act "with respect to" temporary political signs].)[6]

We conclude that the Act does not apply to the posting of a sign on private property adjacent to a highway that expresses the property owner's opinion concerning a state or federal public official.

* * * * *

---

[4]In 50 Ops.Cal.Atty.Gen. 3 (1967) we concluded that the Act's requirements applied to political campaign signs, primarily because the focus of the Act was determined to be upon highway safety.

[5]"When a revised act reenacts a provision of an earlier act, its effect is to continue in force that which is reenacted. [Citation.]"   (*In re Robert A.* (1992) 4 Cal.App.4th 174, 188; see *Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 235; *State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 774.)

[6]Whether political campaign signs would constitute "advertising" subject to the Act's requirements is beyond the scope of this opinion.   We deal here only with political expression not aimed at inducing a particular vote in a scheduled election.