Argued and submitted July 31, reversed and remanded October 16, 1996

HAMILTON PROPERTIES, INC.,
an Oregon corporation,
*Respondent,*

*v.*

ASSOCIATED GROCERS INCORPORATED,
a Washington corporation,
*Appellant.*

(C940838CV; CA A90081)

925 P2d 1237

James D. Nelson argued the cause for appellant. With him on the briefs were Jack A. Friedman and Betts, Patterson & Mines, P.S., Seattle, Washington.

Darleen Darnall argued the cause for respondent. With her on the brief were Robert D. Newell and Davis Wright Tremaine.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Plaintiff moved for summary judgment in this breach of contract action on the issues of liability and damages, and defendant filed a cross-motion for summary judgment on the same grounds. The trial court granted plaintiff's motion, denied defendant's motion, and entered judgment in favor of plaintiff. ORCP 47. Plaintiff then moved for entry of an amended judgment to include prejudgment interest. The trial court granted plaintiff's motion and entered an amended judgment that included prejudgment interest. Defendant appeals, and we reverse.

The dispute in this case involves a proposed grocery store project that was to be built on a six-acre parcel of real property owned by plaintiff in the City of Tigard (City) just off of Interstate Highway 5 at the intersection of 72nd Avenue and Durham Road. Plaintiff, a real estate developer, and defendant, a wholesale grocery distributor, entered into a letter of intent in December 1992, contemplating that plaintiff would construct the development and lease it to defendant. The letter was preliminary and subject to the following conditions: (1) a mutual agreement on a site plan; and (2) satisfactory evidence that plaintiff could obtain City approval for the construction of a food store similar to a store that defendant had constructed in Roseburg. The letter of intent also provided that plaintiff would construct the grocery store in compliance with detailed plans and specifications that would be provided by defendant's architect and that the parties would agree on those plans and specifications before the commencement of construction. The letter further provided that a final copy of the plans and specifications for defendant's Roseburg store would be provided to plaintiff and would serve as a model for the final plans for the City project.

As a result of the letter of intent, plaintiff entered into a fee agreement in January 1993 with a real estate brokerage firm in which plaintiff agreed to pay the firm $187,500, once the lease had been executed between plaintiff and defendant. Apparently, the firm had procured defendant as the tenant for plaintiff's proposed development. Thereafter, plaintiff and defendant entered into an executory commercial lease and a construction agreement in August 1993.

In general terms, the construction agreement, which was incorporated into the lease agreement, provided that plaintiff would construct the store building, the parking lot, and the other on-site and off-site improvements according to defendant's specifications. The agreement refers to an attachment, Exhibit B, which is a site plan for all on- and off-site improvements. Defendant, in turn, agreed to lease the property from plaintiff for 20 years.

The parties executed the lease and construction agreement before obtaining land use approval for the project. In September 1993, plaintiff applied to City for land use approval and site development review of the project. During the review process, plaintiff worked with its engineering consultants to address concerns expressed about the project by City and other parties affected by the proposed development. The parties anticipated that City would approve a site plan, because a grocery store was an approved use on the site and the site plans for the project were prepared by the architect and the engineer for the project to conform to applicable City standards. It is uncontradicted that plaintiff informed defendant of all proposed changes submitted to City, but defendant denies that it ever agreed to them.

In December 1993, City granted site development review approval subject to a number of conditions that differed from Exhibit B. City required that those conditions be satisfied before the issuance of a building permit. After the approval, defendant wrote a letter to Tri-Met (a third party affected by the development) stating that it had recently approved the site development review application and that it was committed to accomplishing the improvements to the intersection as recommended by the engineering traffic report for the project. However, defendant later determined that the approved plan would not yield a profitable store. In February 1994, defendant notified plaintiff that it intended to terminate the project. Plaintiff responded by demanding reimbursement under paragraph 2.3 of the construction agreement for its expenses and, subsequently, it filed this action.

Plaintiff moved for summary judgment in the litigation, arguing that "[p]laintiff's right to liquidated damages

from [d]efendant [under paragraph 2.3] * * * became absolute when defendant and its architect failed to supply approved plans and specifications for the site improvements to plaintiff." Paragraph 2.3 of the construction agreement provides:

> "Promptly (within 15 days after receipt of City of Tigard Preliminary Site Design approval) following mutual execution of the Lease and this Construction Agreement, [defendant] shall deliver to Architect information and drawings outlining in reasonable detail [defendant's] requirements and specifications as to the Building and related improvements. Thereafter, Architect shall promptly (within 60 days after receipt of City of Tigard Preliminary Site Design approval) prepare the Building Plans and Specifications for the Building and related improvements based upon the information furnished by AG *(revised to comply with City of Tigard Preliminary Site Design approval)* and based upon the description of [plaintiff's] and [defendant's] work in this Construction Agreement. [Plaintiff] and [defendant] recognize that time is of the essence of this Agreement and that [plaintiff] will suffer financial loss if [defendant] and/or its Architect do not deliver approved Plans and Specifications to [plaintiff] within the times specified herein. Accordingly, the parties agree that as liquidated damages for any such delay (but not as a penalty) [defendant] shall reimburse [plaintiff] for any costs incurred for this project by such time. * * * The following are estimates of the costs expected to be so incurred to be paid by [defendant] to [plaintiff]: one-half real estate broker fee, $190,000; Accounting, $5,000; Legal fees, $6,000; Engineering fees, $40,000; permit fees, $200,000. This provision only limits damages if such delay occurs prior to the time construction commences." (Emphasis supplied.)

Defendant countered that the phrase "within 15 days after receipt of City of Tigard Preliminary Site Design approval" was a condition precedent to its obligations under the agreement that never occurred because City did not approve the site plan contained in Exhibit B. The trial court rejected defendant's argument and granted summary judgment to plaintiff. After the court granted summary judgment, defendant filed its notice of appeal. Plaintiff then filed a motion for entry of an amended judgment to include prejudgment interest, which the court granted.

First, we turn to the assignments of error pertaining to the summary judgment. Summary judgment is appropriate if the moving party can show that the pleadings, depositions and affidavits contain no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47C; *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243, *rev allowed* 323 Or 483 (1996). At the heart of defendant's argument is the proposition that the agreement contemplates approval of the site plan in Exhibit B as it was attached to the lease. Plaintiff contends that the contract provisions, when viewed as a whole, establish that both parties understood at the time that the agreements were signed that Exhibit B would be modified in the process of obtaining city approval.

In a contract dispute, a party will be entitled to summary judgment only if the governing terms of the contract are unambiguous. *Hauge v. Vanderhave*, 121 Or App 221, 224, 854 P2d 1002, *rev den* 317 Or 583 (1993). If the language is ambiguous, then what the parties intended by that language presents a question of fact to be decided by the trier of fact. *Id.* If the terms are unambiguous, then the construction of the contract is a legal question subject to summary judgment. *Bartlam v. Tikka*, 50 Or App 217, 220-21, 622 P2d 1133, *rev den* 290 Or 853 (1981). Whether language in a contract is ambiguous is a question of law. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978). A contract is ambiguous

> "if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985).

Finally, ORS 42.230[1] requires us to view the contract as a whole, giving effect to every word and phrase.

On appeal, plaintiff argues that when reading the agreement as a whole, it is clear that the parties intended

---

[1] ORS 42.230 states that "where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

that the site plan in Exhibit B be a beginning point and that the parties would modify it during the ongoing process to procure an approved site plan. To support its reading of the agreement, plaintiff relies on several provisions of the construction agreement in addition to the language in paragraph 2.3. Specifically, paragraph 2.4 of the construction agreement provides that

"[u]ntil final Building Plans and Specifications are approved by [defendant] and [plaintiff], [defendant] may change or revise information as to [defendant's] requirements and may request that Architect change the Building Plans and specifications so as to produce a Building acceptable to [defendant]."

Plaintiff also points to paragraphs 6.1 and 6.2 of the construction agreement. Paragraph 6.2 provides:

"[Plaintiff] shall also have the following off-site and on-site improvements constructed at [plaintiff's] sole cost and expense (provided [plaintiff] shall only be required to construct the off-site and on-site improvements in accordance with the Approved Site Plans and Specifications, and any general description of work to be performed by [plaintiff] as set forth in this Section 6.2 or elsewhere in this Agreement shall be superseded entirely by the Approved Site Plans and Specifications):

"(a)    All off-site and on-site improvements shown on Exhibit B to the Lease or required by the Approved Plans and Specifications."[2]

Defendant argues that, because certain provisions in the lease agreement and construction agreement refer specifically to Exhibit B, those provisions create a material issue of

---

[2] Paragraph 6.1 states:

"The Approved Building Plans and Specifications shall set forth in detail the work required to be done to construct [defendant's] Building which work shall include, but not be limited to, the following items (provided [plaintiff] shall only be required to construct [defendant's] building in accordance with the Approved Building Plans and specifications, and any general description of work to be performed by [plaintiff] as set forth in section 6.1 or elsewhere in this Agreement shall be superseded entirely by the Approved Building Plans and specifications[.])"

fact about what the parties intended. Defendant relies on section 1.2 of the construction agreement, which provides, in pertinent part:

"[o]n-site improvements shall be located as shown on the site plan attached as Exhibit B to the Lease, and no additional structures or improvements shall be placed on the Leased Premises without [defendant's] prior written consent."

Also, Paragraph 1.3 of the construction agreement provides that "[o]ff-site improvements shall be located as shown on Exhibit B to the Lease." The definition of "Leased Premises" set forth in the lease agreement states:

"The Leased Premises comprise the entire land parcel described on attached [legal description] and are shown on the Site Plan, Exhibit B. The Site Plan shows the location of [defendant's] Building, parking, access and interior drive lanes on the Leased Premises."

■ Whether or not the paragraphs in the agreement relied on by the parties render the agreement ambiguous requires us to read the agreement as a whole and to give effect to each provision. The difficulty with defendant's argument is that it would render the provisions in the agreement that contemplate revision to comply with City's approval meaningless. On the other hand, section 1.2 is a strong indication that the site plan was to be in accordance with Exhibit B subject to mutually agreed upon modifications by the parties. However, even if the agreement is unambiguous and contemplates modifications to Exhibit B, plaintiff is not entitled to summary judgment. The evidence is in conflict in regard to whether defendant agreed to the proposed modifications submitted to City. According to plaintiff, defendant did not object to any of the proposals or alternatives submitted to City that resulted in changes to the site plan. Defendant's representative averred that he did not give his approval to any of the proposed changes and that he lacked that authority. We hold that this evidentiary conflict precludes summary judgment for plaintiff and, accordingly, the trial court erred.

Inasmuch as the summary judgment must be reversed, we do not reach defendant's other assignments of

error regarding damages and the award of prejudgment interest.

Reversed and remanded.