Argued and submitted January 13, affirmed September 17, 1997

# OUTDOOR MEDIA DIMENSIONS INCORPORATED,
## an Oregon corporation,
### *Appellant,*

*v.*

## STATE OF OREGON,
### Jimmy L. Odom, Julie Evey,
### and Henry Montes,
### *Respondents.*

## (94-3953-L2; CA A91779)

945 P2d 614

107-a

Alan R. Herson argued the cause and filed the briefs for appellant.

Rives Kistler, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff appeals from a summary judgment on its claims for conversion, deprivation of civil rights, 42 USC § 1983, and declaratory and injunctive relief, in which it raised several constitutional challenges to Oregon's billboard statute. We affirm.

Plaintiff is a corporation that owns three billboards. Its conversion and civil rights claims pertain only to the first billboard, and its declaratory and injunctive relief claims relate to the second and third billboards. On appeal, plaintiff makes 22 assignments of error, many of which address overlapping issues. For the sake of clarity and organization, we address plaintiff's claims in the order that they were pled.

The first billboard was installed along Route 62 in Jackson County, Oregon. Plaintiff placed a religious message on one side and an advertisement for a radio station on the other. On February 19, 1993, the Department of Transportation (department) notified plaintiff that its billboard violated the Oregon Motorist Information Act (OMIA). ORS 377.700 to 377.840 and ORS 377.992.

The OMIA generally prohibits the installation or maintenance of any "outdoor advertising sign" or any "directional sign" visible to motorists traveling on state highways, unless it complies with the OMIA, state administrative rules and federal law, or unless it existed in a commercial or industrial zone on June 12, 1975. ORS 377.715; ORS 377.765(1).[1]

---

[1] ORS 377.712(1) provides:

"Notwithstanding the provisions of ORS 377.700 to 377.780, the owner of any outdoor advertising sign in existence on June 12, 1975, located in a commercial or industrial zone in existence on June 12, 1975, that meets all requirements for obtaining an outdoor advertising sign permit as set out in ORS 377.700 to 377.780 and for which the owner had not secured an outdoor advertising permit as required by ORS 377.725 prior to June 12, 1975, either because of ignorance of the requirements of ORS 377.725 or because the area, road or street adjacent to which the sign was situated was not, at that time, designated as a state highway, shall be entitled to the issuance of an outdoor advertising sign permit by the division upon application by the owner of the sign and the payment of the fee set out in ORS 377.729."

ORS 377.765(1) provides:

"Outdoor advertising signs in existence on June 12, 1975, and lawfully located within commercial or industrial zones in existence on June 12, 1975,

"Outdoor advertising signs" are signs that advertise "[g]oods, products or services which are not sold, manufactured or distributed on or from the premises on which the sign is located," ORS 377.710(22)(a), or those that advertise "[f]acilities not located on the premises on which the sign is located," ORS 377.710(22)(b) (*i.e.*, off-premises signs).

If an outdoor advertising sign existed in a commercial or industrial zone on June 12, 1975, the owner may obtain a permit and allow the sign to remain without violating the statute. ORS 377.712(1); ORS 377.725(2) and (14).[2] Permits may be transferred from one person to another, and signs may be relocated either within a commercial or industrial zone or to another commercial or industrial zone, subject to geographic limitations. ORS 377.725(2); ORS 377.767.

The department's notice alleged that plaintiff's billboard violated the OMIA because it was a newly erected off-premises sign for which no permit had been granted and for which no permit can be issued, *i.e.*, it "advertises an activity which is not at the location of the sign," and it was visible from a state highway. The notice further stated that if plaintiff did not request a hearing, or correct or remove the sign within 30 days of the date of the notice, the sign would be subject to removal, and plaintiff would be billed for removal costs.

---

and outdoor advertising signs visible from a road or street that is designated as a state highway after February 19, 1990, lawfully located within a commercial or industrial zone at the time of designation as a state highway, may remain. Subject to the provisions of ORS 377.700 to 377.840, such signs may be maintained, reconstructed and relocated. However, such signs shall not be relocated unless a relocation permit has been issued therefor pursuant to ORS 377.767. No permit may be issued to relocate an outdoor advertising sign that was not in existence on June 12, 1975, except that signs that are visible from a road or street that is designated as a state highway after February 19, 1990, and that were lawfully located within a commercial or industrial zone at the time of designation as a state highway, may be relocated within the same section of the road or street."

[2] ORS 377.735 provides exemptions from the permit requirement for 15 particular types of signs, including signs identifying bus stops, city signs showing times and places of church services and civic organization meetings, residential directional signs, official traffic control signs, temporary signs announcing charity drives or auctions, memorial signs or tablets, temporary signs announcing state and county fairs and rodeos, "for sale" signs, church directional signs, and temporary political signs, among others.

Plaintiff did not request a hearing but instead attempted for several months without success to obtain a permit.[3] In April 1994, plaintiff removed both signs from the billboard. On September 5, 1994, the department hired a contractor to dismantle and remove the billboard structure. Plaintiff then filed this action, alleging conversion of the structure, among other claims. The department subsequently gave plaintiff permission to retake possession of the structure, which plaintiff did. However, the department billed plaintiff $962.50 in removal costs. In its second amended complaint, plaintiff realleged a conversion and also sought a declaratory judgment that it was not liable to the department for removal costs. The department moved for summary judgment, which the trial court granted.

The department is entitled to summary judgment under ORCP 47 if the pleadings, depositions and affidavits show that there is no genuine issue of material fact, and that the department is entitled to judgment as a matter of law. *Hamilton Properties, Inc. v. Associated Grocers*, 144 Or App 171, 176, 925 P2d 1237 (1996). On review, we view the record in the manner most favorable to plaintiff to determine whether an objectively reasonable juror could return a verdict for plaintiff on the summary judgment evidence. *Barber v. George*, 144 Or App 370, 372, 927 P2d 140 (1996), *rev den* 324 Or 560 (1997). Because the facts underlying plaintiff's first claim are undisputed, there are no genuine issues of material fact, and we need only determine whether the department was entitled to judgment as a matter of law. *FOPPO v. State of Oregon*, 144 Or App 535, 539, 928 P2d 335 (1996); *Mitchem v. Rice*, 142 Or App 214, 217, 920 P2d 1121, *on recons* 143 Or App 546, 923 P2d 1347, *rev den* 324 Or 394 (1996).

Plaintiff's declaratory judgment action depends directly on its conversion claim; if there was no conversion of the billboard structure, then plaintiff is not entitled to a declaratory judgment that it was not liable for the cost of

---

[3] In an affidavit, plaintiff's president alleged that a department employee told him that the notice of violation was moot and plaintiff should not request a hearing because plaintiff was seeking a permit. However, on appeal, plaintiff does not argue that its reliance on the employee's remarks somehow excused its failure to request a hearing.

removing that structure. We therefore begin by addressing plaintiff's conversion claim.

■         An action for conversion lies when there has been

"an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 253 Or 658, 663, 456 P2d 1004 (1969) (quoting *Restatement (Second) of Torts* § 222a at 431 (1965)).

Generally, when property is lawfully taken, there is no conversion. *Boling v. Parrett*, 21 Or App 823, 825-26, 536 P2d 1272 (1975).

The department argues that there was no conversion, because ORS 377.775 authorized the removal of the structure as a "nonconforming" sign, which is defined as a sign "that is subject to, but does not comply with," the OMIA. ORS 377.710(21).[4] ORS 377.775(3)(b) provides that, if "the sign is not made to comply or is not removed and if the owner does not request a hearing within the time required," the director[5] "may remove and destroy or otherwise dispose of the sign." The department contends that the "time required" is 30 days from the date of the notice, and when plaintiff failed to seek a hearing, or correct or remove the sign by that date, the director had authority to remove it.

■         For purposes of its conversion claim, plaintiff apparently concedes that its billboard violated the OMIA because it was installed without a permit. It argues, however, that ORS 377.775 authorizes only the removal of noncomplying signs and that plaintiff brought its billboard into compliance by removing the religious and commercial advertising. We disagree.

It is true that once plaintiff removed the advertising, the billboard was no longer an "outdoor advertising sign" as defined by ORS 377.710(22). However, that did not bring the

---

[4] Although ORS 377.773 allows the removal of signs that have been blank for six months, that section did not authorize removal of this structure, which plaintiff contends had been blank for only "four or five months" at the time it was removed. On appeal, the department does not contend otherwise.

[5] "Director" means the Director of Transportation. ORS 377.710(8).

billboard into compliance with the statute. ORS 377.775(3) gave plaintiff 30 days from the date of the notice to make the sign comply, remove it or request a hearing. As noted, plaintiff did not request a hearing. Compliance means obtaining a permit, ORS 377.725, and removal of the "sign" means removal of the "structure." *See* ORS 377.710(29) and (33) ("sign" includes "the sign structure," which means "the supports, uprights, braces, framework and display surfaces of a sign").[6] Plaintiff took none of these actions within the required time period, and the department therefore had authority to remove the entire billboard structure, whether or not plaintiff had removed the display advertising.[7]

Plaintiff does not argue that the department's 14-month delay in acting otherwise divested it of that authority. Furthermore, plaintiff's constitutional challenges to the OMIA itself are confined to its second and third claims—that is, plaintiff does not contend that the department effected a conversion because the provisions of the OMIA on which it relied are unconstitutional. Accordingly, there was no conversion, and the department was entitled to judgment as a matter of law on that claim. Because the department had authority to remove the structure, plaintiff also was not entitled to a declaratory judgment that it was not liable for the department's cost of removing it. Summary judgment was therefore proper on the entire first claim.

Plaintiff next argues that the trial court erred in granting summary judgment on its second claim, a civil rights action brought under 42 USC section 1983 against three department employees. Plaintiff alleged that Odom, Evey and Montes (defendants), acted under color of law in depriving plaintiff of its constitutional rights by ordering the

---

[6] We note that one of the policies underlying the OMIA is to "preserve the natural beauty and aesthetic features of [the state's] highways and adjacent areas." ORS 377.705. A blank billboard is just as contrary to that purpose as is a billboard with advertising.

[7] Although plaintiff's president alleged in an affidavit that a department employee told plaintiff that if it took down the radio ad the billboard structure would not be removed, plaintiff does not argue on appeal that its reliance on that advice somehow deprived the department of authority to remove the structure. Plaintiff only argues that its removal of the advertising brought the structure into compliance with the OMIA.

radio advertisement removed and by removing the billboard structure.

■      Plaintiff first asserts that it was deprived of its right to free speech, arguing that the OMIA violates the First Amendment[8] under *Metromedia, Inc. v. San Diego*, 453 US 490, 101 S Ct 2882, 69 L Ed 2d 800 (1981), a plurality opinion addressing a billboard law similar to the OMIA.

In *Metromedia*, the Supreme Court considered a city ordinance that permitted billboards advertising goods and services available on the property where the sign was located and prohibited those advertising goods or services produced or offered elsewhere. The ordinance also provided 12 exceptions to the general prohibition for particular types of signs, whether on-site or off, including government signs, historical plaques, religious symbols, "for sale" or "for lease" signs, and temporary political signs, among others. 453 US at 493-96.

Four justices reasoned that the on-site exception applied only to commercial advertising, and, because there was no similar exception for noncommercial signs, the ordinance impermissibly favored commercial over noncommercial speech in violation of the First Amendment. 453 US at 513. Those same justices also would have held the ordinance unconstitutional because the 12 exceptions amounted to a content-based restriction. *Id.* at 514-16. Under the *Metromedia* plurality, plaintiff argues, the OMIA violates the First Amendment because it provides greater protection to commercial speech than to noncommercial speech and allows "some non-commercial speech in places where other non-commercial speech is prohibited."

Plaintiff's reliance on *Metromedia* is questionable. That decision failed to garner a majority; only four justices subscribed to the plurality opinion cited by plaintiff, while two concurring justices and three dissenters relied on completely separate analyses.[9] As the Third Circuit noted:

---

[8] The First Amendment provides:

"Congress shall make no law * * * abridging the freedom of speech[.]"

[9] Plaintiff asserts that the Court later affirmed the plurality's approach in *City of Ladue v. Gilleo*, 512 US 43, 114 S Ct 2038, 129 L Ed 2d 36 (1994). Our reading of that case does not support plaintiff's assertion.

"The *Metromedia* decision was badly splintered, producing five separate opinions. * * * [I]t is difficult to divine what, if any, principles from *Metromedia* became the governing standard for future cases, *i.e.*, 'the law of the land.' " *Rappa v. New Castle County*, 18 F3d 1043, 1057 (3rd Cir 1994).

The Supreme Court has stated that when "no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.' " *Marks v. U.S.*, 430 US 188, 193, 97 S Ct 990, 51 L Ed 2d 260 (1977), *quoting Gregg v. Georgia*, 428 US 153, 169 n 15, 96 S Ct 2909, 49 L Ed 2d 859 (1976).

The only discernible principle upon which a majority of the *Metromedia* court agreed was that San Diego's aesthetic interest in avoiding visual clutter provided an acceptable justification for a content-neutral ban on billboards. *City Council v. Taxpayers for Vincent*, 466 US 789, 806-07, 104 S Ct 2118, 80 L Ed 2d 772 (1984). We otherwise agree with the Third Circuit that *Metromedia*'s five opinions involved such varied approaches that there is "no common denominator between them" and that they "do not establish a governing standard for future cases." *Rappa*, 18 F3d at 1058-60. Nonetheless, resolution of plaintiff's arguments does not require resort to *Metromedia*. Even assuming that the plurality's analysis is the "law of the land," it does not advance plaintiff's claim, at least under the arguments made here.

First, the OMIA does not favor commercial over noncommercial speech. Unlike the on-site exception in the *Metromedia* ordinance, which the plurality there construed as applying only to commercial advertising, the OMIA's on-premises exception applies equally to commercial and noncommercial billboards.

The OMIA generally prohibits "outdoor advertising signs," ORS 377.715, which are defined as signs that advertise goods, products, or services that are not sold, manufactured or distributed on or from the premises where the signs are located, ORS 377.710(22)(a), or that advertise facilities not located on the premises, ORS 377.710(22)(b). Conversely, if a sign advertises on-premises goods, products, services, or

facilities, then it is not an "outdoor advertising sign" and is not prohibited by the OMIA. Because the definition of "outdoor advertising sign" does not depend on the commercial or noncommercial nature of the message, the OMIA's on-premises exception does not favor commercial over noncommercial advertising.[10] *See also Rappa*, 18 F3d at 1067 (applying same construction to Delaware billboard law).

Plaintiff nonetheless contends that the OMIA treats noncommercial speech more harshly than commercial speech because it places size and durational limits on temporary off-premises political signs, ORS 377.735(1)(o), while not similarly limiting on-premises commercial advertising.[11] Plaintiff misconstrues the statute.

As discussed, the OMIA implicitly permits *all* on-premises advertising, regardless of its message. Therefore, on-premises political signs[12] are granted the same protection as on-premises commercial signs. Off-premises advertising, on the other hand, is generally prohibited unless a permit is obtained and the sign is located in a commercial or industrial zone. ORS 377.725; ORS 377.712. The subsection cited by plaintiff, ORS 377.735(1)(o), *exempts* off-premises political signs from that prohibition but subjects them to size and duration restrictions. Off-premises political signs are allowed if the surface area does not exceed 32 square feet and if they are removed within 30 days after the election. ORS 377.735(1)(o). In that sense, political signs are granted *more protection* or treated more favorably than their commercial counterparts, which generally cannot be displayed off-premises without a permit, regardless of size or duration.[13]

---

[10] For example, a sign advertising gasoline prices that is installed at a gas station advertises a product that is sold on the premises. Similarly, a sign that reads "Give to the United Way" posted at a United Way office, and a sign reading "Attend the First Baptist Church," posted at the church, respectively advertise services and facilities located on the premises. The OMIA implicitly allows each of these signs, even though the first advertises a commercial message and the others noncommercial messages.

[11] As an example, plaintiff argues that the OMIA would allow a 200-foot sign reading "Shop at Sears" on a Sears store, but not a sign of the same size reading "Defeat Proposition No. 1" at the same site.

[12] An example of an on-premises political sign would be a billboard reading "Vote for Jones" that is posted at the Jones campaign headquarters.

[13] Plaintiff does not argue that the *other* off-premises exceptions in ORS 377.735, which exempt certain "commercial" signs without imposing size or

As another example of the OMIA favoring commercial over noncommercial speech, plaintiff argues that a "for sale" sign would be allowed in a vacant lot, ORS 377.735(1)(k), while a sign reading "Attend First Baptist Church" would not.[14] However, ORS 377.735(1)(k) exempts "for sale" signs that are "erected on the advertised premises," and therefore allows such signs only *on-premises*. A "for sale" sign advertising some other property would therefore be prohibited as an off-premises sign, in the same manner as a sign reading "Attend First Baptist Church" that is not located at the church itself. We conclude that the OMIA does not favor commercial over noncommercial speech, at least as argued by plaintiff.

■     Plaintiff next contends that, by placing permit requirements on only "outdoor advertising signs," the OMIA unconstitutionally allows "some non-commercial speech in places where other non-commercial speech is prohibited." Plaintiff hypothesizes that signs reading "Give to the United Way" or "Attend First Baptist Church" would be prohibited in a vacant roadside lot because they advertise services or facilities not located on the premises. ORS 377.710(22). However, a billboard reading "Save the Whales" would be allowed in the same place, plaintiff asserts, because it does not advertise goods, products, services or facilities and therefore is not an "outdoor advertising sign."

■     We do not agree that a sign proclaiming "Save the Whales" is exempt from the OMIA simply because it does not advertise goods, products, services, or facilities. Whether such a sign is subject to the OMIA is matter of legislative intent that involves interpretation of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). As always, we interpret a statute by first examining its text and context. *Id.* at 610-11.

duration limits, treat commercial speech more favorably than political speech. That question was neither argued nor briefed to this court, and we do not address it. *See State v. Montez*, 309 Or 564, 604, 789 P2d 1352 (1990) (declining to address "guarantee clause" argument that was not adequately briefed).

[14] Plaintiff does not appear to refer to church directional signs, which are allowed off-premises without a permit. ORS 377.735(1)(n).

■      Although the text of the OMIA's operative provisions generally addresses only what is *prohibited* in the absence of a permit (*i.e.*, off-premises signs), we construe them in context as also defining the limits of what is *allowed*—*i.e.*, only on-premises signs. Context includes "other provisions of the same statute." *PGE*, 317 Or at 611. ORS 377.725(14) effectively places a cap on the number of highway billboards in Oregon by denying permits for the installation of new billboards after June 12, 1975. Also, ORS 377.705 provides that one of the purposes of the OMIA is to "preserve the natural beauty and aesthetic features of [the state's] highways and adjacent areas." Given that language, we do not believe the legislature intended to allow the indiscriminate installation of billboards bearing messages such as "Save the Whales" simply because those signs do not advertise goods, products, services or facilities.[15]

■      To the extent that plaintiff is arguing that the OMIA's on-premises/off-premises distinction imposes a content-based restriction on speech, we also reject that argument.[16] Exempting billboards that advertise on-premises activity, while not similarly exempting those advertising off-premises activity, is not a *content*-based distinction. Although a billboard's *message* must be evaluated to determine whether it relates to an activity on or off the premises, it is not the content, subject or viewpoint of that message that determines whether a permit is required. *See Van v. Travel Information Council*, 52 Or App 399, 408-09, 628 P2d 1217 (1981) ("[T]he Oregon statute as a whole is not directed to content. Billboards are regulated, and in some cases banned altogether, not because of the messages they convey but

---

[15] We note in passing that the political sign exemption, ORS 377.735(1)(o), also would not permit a generic off-premises sign reading "Save the Whales," unless that sign pertained to a "current political campaign." *Van v. Travel Information Council*, 52 Or App 399, 411, 628 P2d 1217 (1981) ("Messages such as 'Support E.R.A.,' 'No Nukes' or 'Guns don't kill people—people kill people' are banned altogether from the highways.").

[16] Plaintiff does *not* argue that the exceptions in ORS 377.735 involve content-based distinctions that exempt particular off-premises signs based on their messages. *See Metromedia, Inc. v. San Diego*, 453 US 490, 514-16, 101 S Ct 2882, 69 L Ed 2d 800 (1981) (plurality viewed such exceptions as content-based and unconstitutional); *Van*, 52 Or App at 409 (stating that exemptions in ORS 377.735 are content-based, but not deciding their constitutionality). Because that issue was neither argued nor briefed, we decline to address it. *Montez*, 309 Or at 604.

because the medium of communication is itself objectionable.")

The OMIA does not require the state to evaluate competing messages in an effort to decide which subjects or viewpoints are permissible and which are not. It only requires that the billboard, whatever its content, have some relationship to the property on which it is located. Such a requirement is not content-based. The Third Circuit stated as much in addressing a similar on-site exception in Delaware's billboard statute.

> "The exception for signs advertising activities conducted on the premises * * * is constitutional * * * because it is not a content-based exception at all. Although evaluating whether a sign is an onsite sign does require the state to analyze the content of the sign, the onsite exception does not preclude any particular message from being voiced in any place; it merely establishes the appropriate relationship between the location and the use of an outdoor sign to convey a particular message." *Rappa*, 18 F3d at 1067 (citations and footnotes omitted).

We conclude that the OMIA's distinction between on-premises and off-premises advertising is not a content-based restriction.[17] Because plaintiff does not otherwise contend that the OMIA violates the First Amendment, we hold on this record that plaintiff was not denied its right to free speech.

As alternate grounds for its section 1983 claim, plaintiff asserts a denial of due process under the Fourteenth Amendment, arguing that the OMIA violates Article I, section 8, of the Oregon Constitution,[18] and that, even if valid, the OMIA was erroneously applied in this case. Defendants respond that a " 'mere error of state law' is not a denial of due process," *quoting Engle v. Isaac*, 456 US 107, 121 n 21, 102 S Ct 1558, 71 L Ed 2d 783 (1982), *Gryger v. Burke*, 334 US 728, 731, 68 S Ct 1256, 92 L Ed 1683 (1948).

---

[17] Defendants make no attempt to characterize the OMIA as a reasonable time, place and manner regulation of speech, and we do not decide that issue.

[18] Article I, section 8, provides, in part:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever[.]"

We need not resolve that issue. Even assuming that plaintiff's state law claims are cognizable under 42 USC section 1983, they are without merit. Plaintiff's Article I, section 8, argument rests solely on its characterization of the OMIA as a content-based restriction. Plaintiff makes no arguments different from those it raised under its First Amendment claim, which we have already rejected, 150 Or App at 117-18, and does not explain how the OMIA otherwise violates Article I, section 8.[19] Plaintiff alternatively argues that it was denied due process because defendants misapplied the OMIA, which, even if valid, did not authorize removal of its billboard. We have already rejected that argument in discussing plaintiff's conversion claim. 150 Or App at 110-12.

■    Plaintiff next asserts a denial of due process under the OMIA's provisions governing relocation permits and the transfer of existing permits. The OMIA allows a person with a billboard permit to apply to move its billboard to another location, ORS 377.765, or to transfer its permit to another person, ORS 377.725(2). But there is no provision mandating how long the department has to act on an application under those sections or providing for prompt judicial review of the denial of a permit.[20] In the absence of such provisions, plaintiff argues, the OMIA constitutes a "prior restraint" on speech in violation of the First Amendment under *Freedman v. Maryland*, 380 US 51, 85 S Ct 734, 13 L Ed 2d 649 (1965).

■    The U. S. Supreme Court has identified two types of prior restraint in this context. The first involves statutes that place "unbridled discretion in the hands of a government official or agency" and consequently make the enjoyment of constitutional rights "contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official." *FW/PBS, Inc. v. Dallas*, 493 US 215, 225-26, 110 S Ct 596, 107 L Ed 2d 603 (1990). The second involves laws that fail "to place limits on the time within which the decisionmaker

---

[19] For example, as in its First Amendment claim, plaintiff does not argue that the exceptions in ORS 377.735 are directed at the content of expression, nor does it contend that the OMIA itself is "overbroad" or "unconstitutional as applied."

[20] Plaintiff alleges that it applied for a relocation permit for its first billboard, but there is no indication when, if ever, the department acted on that application.

must issue the license." *Id.* at 226. The lack of such limits amounts to a prior restraint because it "creates the risk of indefinitely suppressing permissible speech." *Id.* at 227.

*Freedman* addressed this second category. There, a Maryland censorship statute prohibited exhibitors from showing any film without first obtaining a license from a state censorship board, which reviewed films for obscenity, corruption of morals and incitement to crime. 380 US at 52-53. The Supreme Court held the statute to be an unconstitutional prior restraint, because it failed to provide adequate procedural safeguards to ensure against the suppression of constitutionally protected speech. *Id.* at 59-60.

> "Because the censor's business is to censor, there inheres the danger that he may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression. And if it is made unduly onerous, by reason of delay or otherwise, to seek judicial review, the censor's determination may in practice be final." *Id.* at 57-58 (footnote omitted).

To pass constitutional muster, such a statute must, among other things, require the censor either to issue or to deny a license "within a specified brief period" and provide for prompt judicial review of the denial of a license. *Id.* at 59. The Maryland statute failed this test because it set no time limits on the censorship board's action. *Id.* at 60.

Plaintiff argues that the OMIA is similarly flawed because it does not provide that the department must approve or deny an application for a relocation permit "within a specified brief period" of time. Defendants contend that no such deadline is required because, unlike the Maryland statute in *Freedman*, the OMIA is not a content-based prior restraint on speech. We agree.

The OMIA does not require the department, in reviewing applications for relocation permits or the transfer of permits, to evaluate the content of a billboard's message to determine if it contains constitutionally protected speech.[21]

---

[21] Indeed, as defendants assert, there is typically no particular message to evaluate because billboard signs are constantly changing.

The department's concern is merely with a billboard's location, or relocation, not with whether its message is fit for public consumption. Oregon's statute therefore does not present the same danger as the Maryland censorship scheme, and *Freedman*'s procedural safeguards are not required.

Plaintiff, however, relies on *Riley v. National Federation of Blind*, 487 US 781, 108 S Ct 2667, 101 L Ed 2d 669 (1988), which addressed a North Carolina statute that required all paid charitable solicitors to obtain a license. 487 US at 786-87. Although that statute apparently did not require the licensing agency to review the content of speech in determining whether to grant a license, it was nonetheless held to be an unlawful prior restraint under *Freedman* because it failed to require the issuance or denial of a license within a specified brief period of time. *Id.* at 802. *See also FW/PBS*, 493 US at 229 (although ordinance regulating sexually oriented businesses did not require city to judge content of any protected speech in reviewing license applications, licensing scheme was unconstitutional in part because it provided no time limit in which decision must be made).

Plaintiff's reliance on *Riley* is misplaced. Although the statute in *Riley*, like the ordinance in *FW/PBS*, did not require content-review by an administrative official, the licensing scheme itself represented a *legislative* attempt to restrict speech on the basis of content. The statute in *Riley* applied only to paid charitable solicitations, 487 US at 786-87, and the ordinance in *FW/PBS* targeted only "businesses purveying sexually explicit speech," 493 US at 224. Because, as in *Freedman*, both laws involved a branch of government other than the judiciary in evaluating speech on the basis of content, the unlimited delay in obtaining judicial review amounted to an improper prior restraint.

The same concern, however, is not present here, because the OMIA's relocation and transfer provisions do not require the department to review the content of a billboard's message, nor do they represent a legislative attempt to classify and restrict speech on the basis of content. As discussed

above, the OMIA's permit requirement is not content-based,[22] 150 Or App at 117-18, *Van*, 52 Or App at 408-09, and the relocation and transfer provisions apply to all billboards, regardless of the content of their messages. *Riley* and *FW/PBS* are therefore distinguishable.[23]

Plaintiff next asserts under its section 1983 claim that the OMIA violates the Equal Protection Clause of the Fourteenth Amendment.[24] Specifically, plaintiff cites the "grandfather clause" of ORS 377.765, which grants outdoor advertising permits, on application *and* qualification, to those who owned billboards on or before June 12, 1975, but not after. Because this distinction affects the fundamental right of free speech, plaintiff contends, strict scrutiny is required.

Strict scrutiny is appropriate under the equal protection clause if a law "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *San Antonio School District v. Rodriguez*, 411 US 1, 17, 93 S Ct 1278, 36 L Ed 2d 16 (1973).[25] Under either a free speech or equal protection theory, if the fundamental right involved is freedom of speech, the Supreme Court has applied strict scrutiny when the law in question is content based. *Burson v. Freeman*, 504 US 191, 197 n 3, 112 S Ct 1846, 119 L Ed 2d 5 (1992). However, we are aware of no cases, and plaintiff cites none, that

[22] As noted above, plaintiff does not argue that the permit exemptions in ORS 377.735 are content based, and, for the purposes of this appeal, we do not address that argument.

[23] Plaintiff alternatively argues that a department employee *could* base a permit decision on content, for example, by denying a relocation permit because the billboard's owner is a member of political party to which the employee is opposed. The mere possibility of such an application of the OMIA does not affect the facial validity of the statute but instead implicates an "as applied" analysis. However, plaintiff neither alleged nor presented evidence that its permit application involved such a content-based decision.

[24] The Fourteenth Amendment provides, in part:

"No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

[25] To pass strict scrutiny, a law must be "necessary to promote a compelling governmental interest" and be narrowly tailored to achieve that end. *Dunn v. Blumstein*, 405 US 330, 342-43, 92 S Ct 995, 31 L Ed 2d 274 (1972).

apply strict scrutiny to content-neutral regulations that only incidentally affect speech.

In *Taxpayers for Vincent*, the Court addressed a content-neutral ordinance that prohibited the posting of signs on public property. 466 US at 791, 804. The ordinance was intended to serve the city's aesthetic interest in eliminating visual clutter. *Id.* at 807-08. Plaintiffs raised an equal protection-type challenge, arguing that the ordinance failed to advance that interest because it did not ban signs on private property and therefore failed "to apply to all equally unattractive signs wherever they might be located." In response, the Court did not apply strict scrutiny but instead held that the city "could reasonably conclude" that its

> "esthetic interest in the elimination of signs on public property is not compromised by failing to extend the ban to private property. The private citizen's interest in controlling the use of his own property justifies the disparate treatment." 466 US at 811.

In applying a "reasonableness" analysis, the Court in *Taxpayers for Vincent* apparently considered the "rational relationship" test appropriate to content-neutral regulations that incidentally affect speech. Under that test, the challenged classification must "rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 US 1, 10, 112 S Ct 2326, 120 L Ed 2d 1 (1992). In other words, there must be a "rational relationship between the disparity of treatment and some legitimate governmental purpose," *Heller v. Doe*, 509 US 312, 320, 113 S Ct 2637, 125 L Ed 2d 257 (1993), and the challenged law must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 US 307, 313, 113 S Ct 2096, 124 L Ed 2d 211 (1993).

Because the OMIA's off-premises permit requirement is not content-based, 150 Or App at 117-18, we review the exception in ORS 377.765 under the rational relationship test. The stated purposes of the OMIA are highway safety, aesthetics, and the preservation of the state's recreational value, ORS 377.705, which we have held are legitimate state interests. *Van*, 52 Or App at 412.

■ The OMIA's prohibition on the installation of new billboards after June 12, 1975, rationally furthers those interests because the legislature reasonably could have concluded that placing a cap on billboards would control visual blight and make traffic signs more visible. Allowing an exception for billboards already in existence on that date under ORS 377.765 does not compromise the validity of those interests. As in *Vincent*, the legislature could reasonably have concluded that the property interests of billboard owners "justifies the disparate treatment." 466 US at 811.

■ Plaintiff also finds an equal protection violation in ORS 377.756, which requires the department to issue permits to "any city or county that applies or to any nonprofit or civic applicant approved by a city or county." ORS 377.756(1). Plaintiff contends that "ORS 377.756 lets 'nonprofit or civic applicants' display speech, where others, including plaintiff, may not. There can be no justification for allowing these people the right to speak where others may not."

Plaintiff baldly asserts that nonprofit or civic groups "may display any speech they want," but makes no attempt to discern what type of signs the legislature contemplated. Specifically, plaintiff does not apply the methodology for construing statutes, as set out in *PGE*, 317 Or at 610-12. It also does not adequately address defendants' reliance on legislative history, which indicates that ORS 377.756 was intended to allow cities and counties to erect signs welcoming visitors and advertising attractions in the community. *See* Minutes, House Committee on Transportation, HB 3301, April 2, 1987, p 2.[26]

Plaintiff does not explain why cities and counties should not be allowed such signs, nor does it address whether those signs are consistent with the statute's overall "on-premises" exception. *See* ORS 377.756(2) and (3) (requiring that such signs be "within the city limits" or "within one mile of the community growth boundary as designated by the county"). In the absence of such analysis, plaintiff's argument

---

[26] *See PGE*, 317 Or at 611-12 (if legislative intent is unclear after examining text and context, then, and only then, may the court consider legislative history).

is not capable of review. *State v. Montez,* 309 Or 564, 604, 789 P2d 1352 (1990).

To summarize, the application of the OMIA to plaintiff's first billboard did not deny plaintiff the right to free speech, due process or equal protection, nor impose a prior restraint. Accordingly, the trial court properly granted defendants' motion for summary judgment on plaintiff's section 1983 civil rights action.[27]

Plaintiff's third claim is a declaratory judgment action in which plaintiff again raises numerous challenges to the OMIA and seeks injunctive relief against the department's attempts to remove plaintiff's second and third billboards. The second billboard is located along Interstate 5 near Ashland. Plaintiff removed a sign from that billboard after being ordered to do so by the department and replaced it with a religious message. The third billboard is located near Route 62 in Jackson County. When the department notified plaintiff that this billboard was in violation of the OMIA, plaintiff sought a hearing. However, there is no indication in the record whether such a hearing was ever held.

The trial court granted the department summary judgment on the declaratory judgment action. On appeal, the department contends that this claim is procedurally barred because plaintiff did not seek a hearing pursuant to ORS 377.775 and therefore did not exhaust its administrative remedies. Although the department raised "exhaustion" as an affirmative defense in its answer, it did not assert it as a ground for summary judgment. Plaintiff was therefore denied the opportunity to develop a complete factual record on that issue for appeal, and we decline to affirm on those grounds. *State v. Ysasaga,* 146 Or App 74, 78, 932 P2d 1182 (1997); *State v. Knox,* 134 Or App 154, 160-61, 894 P2d 1185 (1995).[28]

---

[27] Because we reject plaintiff's civil rights claims on their merits, we do not address the issue of qualified immunity.

[28] For example, the trial court's order granting summary judgment included a "stipulation" that plaintiff "made a timely request for an administrative hearing upon receipt of the notice of violation regarding the third structure." It is doubtful whether that alone established that plaintiff exhausted its administrative remedies: the record does not indicate whether plaintiff followed through on its request or what the outcome of that hearing was. Because the department did not assert

■    Nonetheless, many of the constitutional challenges plaintiff raises in its declaratory judgment action were disposed of under its section 1983 claim.[29] Accordingly, we address only those contentions that are not common to the second claim. The first of these involves Article I, section 20, of the Oregon Constitution, which provides:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

As under its equal protection argument, plaintiff asserts that the "grandfather clause" in ORS 377.765 unconstitutionally grants a privilege to a class of citizens that is not equally available to all. We disagree.

Allowing off-premises permits for billboards that existed on or before June 12, 1975, ORS 377.765, does not implicate Article I, section 20, because it does not involve a "true class."

> "In evaluating whether a class exists under Article I, section 20, we must first determine whether the class 'is created by the challenged law itself' or 'by virtue of characteristics * * * apart from the law in question.' * * * Classes of the first type are entitled to no special protection and, in fact, are not even considered to be classes for the purposes of Article I, section 20." *Sealey v. Hicks*, 309 Or 387, 397, 788 P2d 435, *cert den* 498 US 819 (1990) (citations omitted).

In *Ag West Supply v. Hall*, 126 Or App 475, 480, 869 P2d 383 (1994), we held that a statute that "grandfathered" in pre-1991 customers of cardlock gas stations was not based on characteristics apart from the law itself and therefore did not create a true class for purposes of Article I, section 20. The same is true here. The "class" of persons or entities that owned billboards on or before June 12, 1975 was created by the OMIA itself. Because there is no true class, there is no constitutional violation. *Id.*

---

exhaustion as a ground for summary judgment, plaintiff was not on notice of the need to present additional evidence on that issue.

[29] Plaintiff makes the same First Amendment, Article I, section 8, prior restraint and equal protection arguments in both the second and third claims.

As with its equal protection argument, plaintiff also asserts that ORS 377.756 violates Article I, section 20, because it grants civic or nonprofit applicants a "special privilege" by allowing them to "get permits to display any speech they want." For the same reasons that we rejected plaintiff's equal protection claim, 150 Or App at 124-25, we decline to address its argument under Article I, section 20.

Plaintiff's assertions that the OMIA is "vague" and was applied in an arbitrary manner also do not merit discussion. The trial court therefore properly granted the department's motion for summary judgment on plaintiff's declaratory judgment action.

Affirmed.