Argued and submitted July 17, 2003, affirmed February 11, 2004

# WEST COAST MEDIA, LLC,
*Respondent,*

*v.*

# CITY OF GLADSTONE,
*Petitioner.*

## 2002-098; A121694

84 P3d 213

Timothy J. Sercombe argued the cause for petitioner. With him on the brief were Carr L. Sahler and Preston Gates & Ellis LLP. John H. Hammond, Jr., and Hutchison Hammond & Walsh, P.C., filed the reply brief for petitioner.

Christopher W. Rich argued the cause for respondent. With him on the brief were Brian D. Chenoweth and Rycewicz & Chenoweth, LLP.

Thomas Sponsler and Beery & Elsner, LLP, filed the *amicus curiae* brief for League of Oregon Cities.

Michael T. Garone, Donald Joe Willis, and Schwabe, Williamson & Wyatt, P.C., filed the *amicus curiae* brief for Oregon Outdoor Advertising Association.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

DEITS, C. J.

**DEITS, C. J.**

The City of Gladstone (city) seeks review of a Land Use Board of Appeals (LUBA) order reversing the city's denial of a request by West Coast Media, LLC (applicant) to place outdoor advertising signs (billboards) on city land adjacent to Interstate 205. In May 2002, applicant submitted four building permit applications to the city requesting approval to construct four billboards on property zoned for commercial and industrial uses. The proposed billboards were each 14 by 48 feet, or a total of 672 square feet per billboard. The city's building official denied the request based on advice from the city attorney that billboards are not a permitted land use within Gladstone's city limits. The city attorney informed applicant of the denial in a letter stating, in part, "[I]t is quite clear that Gladstone's code does not permit billboards to be located anywhere within Gladstone's city limits."

Applicant appealed the city's action to LUBA. Among its arguments, applicant asserted that, because the city code includes a general statement at the outset that signs are permitted, the application should have been approved. Applicant relied on Gladstone Municipal Code (GMC) section 17.52.020, which provides, in part, "Signs shall be allowed in commercial and industrial zoning districts pursuant to the standards of GMC Sections 17.52.020 through 17.52.070." Applicant acknowledged before LUBA that the cited standards for signs in commercial and industrial districts impose size and area limitations. Applicant argued, however, that those limitations apply only to the specific types of signs identified in the code. Applicant reasoned that, because there is no provision in the city code directly addressing billboards, *i.e.,* freestanding signs providing advertising for off-site goods or services, such signs are permitted without restriction in commercial and industrial districts, and, consequently, the city should have granted its request for building permits for the four signs that it sought permission to erect.

LUBA acknowledged that applicant's reading of the city code was plausible and had some textual support. Ultimately, however, it rejected applicant's argument, reasoning:

"[T]he city's view is more consistent with the text, context and structure of GMC 17.52. As we noted in an earlier order in this case, GMC 17.52 is a detailed and comprehensive regulatory scheme for signs. The specific provisions at GMC 17.52.040 through 17.52.0[7]0 reflect an apparent attempt to closely regulate, among other things, the size and height of signs, in order to reduce perceived negative impacts of signs. It seems unlikely that the city would go to great lengths to impose such specific regulations on a particular subset of signs, and nevertheless allow the remaining universe of signs without any limit on size or height. It seems more likely that the city implicitly intended to prohibit signs that were not expressly authorized and regulated under GMC 17.52.040 through 17.52.070."

LUBA went on, however, to conclude that the city's denial of applicant's building permit applications violated Article I, section 8, of the Oregon Constitution, because the city code does not contain, nor did the city apply, any content-neutral distinction that would permit the city to deny the applications in a manner that was consistent with Article I, section 8.[1] LUBA also concluded that the city's denial of the permit applications violated Article I, section 20, of the Oregon Constitution.[2] Accordingly, LUBA reversed the city's denial of the building permit applications.

On review to this court, the city raises numerous challenges to LUBA's analysis of the constitutional issues presented in this case. Before we address those assignments of error however, because it has significance for the constitutional questions raised, we address applicant's cross-assignment of error, in which applicant argues that LUBA erred in concluding that the city was correct in determining that the proposed billboards were not authorized by the city's ordinances.

---

[1] Article I, section 8, of the Oregon Constitution provides, in part:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever[.]"

[2] Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

■      We agree with LUBA's conclusion that the city code does not authorize the proposed billboards. The city code authorizes specific categories of signs and attaches design and other conditions to each of the sign categories designated in the code. As LUBA concluded, however, none of the code provisions authorizes freestanding or other advertising signs that provide information about products or services that are *not* on the site where the sign is located.

The city code includes a subsection addressing "freestanding identification signs." GMC 17.52.040. Significantly, GMC 17.52.040 authorizes freestanding signs that identify the use of the property on which the sign is located, not businesses or products located generally in the community or specifically on other property. Certain "on-building identification" signs are also authorized under the city code. GMC 17.52.050. However, such signs may identify only the use of the premises on which the sign is placed. The city code also permits electronic message signs that are "incorporated into a permanent identification sign," but such signs may be used "only to advertise activities conducted or goods and services available *on the property* on which the sign is located, or to present public service information." GMC 17.52.055 (emphasis added).

Another permitted sign category, traffic control signs, authorizes those signs "that direct the flow of traffic to and from, or within, a development" and "directories" or signs "that identify multiple tenants, uses or buildings within a development and direct on-site vehicular or pedestrian traffic to such tenants, uses or buildings." GMC 17.52.060. GMC 17.52.070 also allows temporary signs limited to advertising "special sales or events." Finally, campaign signs are permitted on private property and unimproved portions of street rights-of-way. Campaign signs are subject to comparatively few restrictions, and the city code does not subject them to size restrictions. GMC 17.52.080.

In sum, with the exception of campaign and some public service signs, nothing in the city code authorizes freestanding or other advertising signs that provide information about *off-site* products or services. Applicant nonetheless argues that the general statement at the beginning of the city

code that "[s]igns shall be allowed," GMC 17.52.020, authorizes the erection of any sign that is not specifically prohibited. We agree with LUBA that the city code is not structured in terms of prohibitions against specific signs or types of signs. Rather, the code specifies what types of sign are permitted and the terms under which they are permitted. The code is structured to grant permission to erect specified types of signs under specific site, size, and other standards. In fact, the very phrase that applicant relies on, "[s]igns shall be allowed," is modified by the phrase, "pursuant to the standards of GMC Sections 17.52.020 through 17.52.070," which are the sections outlined above that set out what kind of signs are permitted. Consequently, we reject, as did LUBA, applicant's argument that the city code authorizes the erection of any sign that is not specifically prohibited.

■   We turn to the city's assignments of error concerning LUBA's analysis of the constitutional issues. Before LUBA, applicant argued that the city code, as applied here, was unconstitutional in that it prohibited freestanding signs carrying commercial advertising but did not prohibit freestanding signs containing public service information or political advertising. LUBA contrasted the city sign code with the Oregon Motorist Information Act (OMIA), ORS 377.700 to 377.840 and ORS 377.992. It took note of our decision in *Outdoor Media Dimensions Inc. v. State of Oregon*, 150 Or App 106, 118-19, 945 P2d 614 (1997), *aff'd on other grounds*, 331 Or 634, 20 P3d 180 (2001), in which we held that the OMIA did not violate the free speech provisions of the state or federal constitution, because it regulated categories of signs without respect to their content; off-premises signs were prohibited regardless of content, and on-premises signs were permitted regardless of content.

In this case, however, LUBA concluded that, in contrast to the OMIA, the city code "selectively allows some [types of] off-premises speech and prohibits others, based on the content of that speech." In particular, LUBA found that the city code permits campaign signs and public service information in both on-premises and off-premises circumstances, while prohibiting commercial advertising on off-premises signs. LUBA concluded that it is "simply impossible to apply GMC 17.52 without inquiry into the *content* of the proposed

sign, in order to determine which if any of the six permitted categories and the six different sets of standards apply." *West Coast Media, LLC v. City of Gladstone*, 44 Or LUBA 503, 532 (2003) (emphasis in original).[3] LUBA concluded that the city code, as written, does not contain, and the city did not apply,

> "any content-neutral distinction that would permit the city to deny petitioner's proposed billboards in a manner consistent with Article I, section 8[, of the Oregon Constitution]. Therefore the city's denials are inconsistent with Article I, section 8."

*Id.* at 534. LUBA also held that the city's denial violated Article I, section 20, of the Oregon Constitution, relying on *Ackerley Communications, Inc. v. Mult. Co.*, 72 Or App 617, 625, 696 P2d 1140 (1985), *rev dismissed*, 303 Or 165 (1987) (ordinance that violates Article I, section 8, also violates equal privileges and immunities requirement of Article I, section 20, because local government can have no constitutionally acceptable interest in regulating expression based on content).

On review to us, the city raises a number of challenges to LUBA's constitutional analysis. We believe it is necessary to address only some of the issues that the city raises. Otherwise, we affirm LUBA's holdings on the Article I, section 8, issue, and, for that reason, we need not address LUBA's holding on the Article I, section 20, issue.

We first address the city's argument that LUBA had an obligation to construe and apply portions of the code in a manner that would not be constitutionally offensive and erred in not doing so. The city would have had LUBA examine the city code to determine if there is any unobjectionable provision that could have been used to deny the application and then apply that code provision to sustain the city's denial. More specifically, the city argues that LUBA should have considered the proposed signs as freestanding signs under the city code, which would then have allowed the denial to have been based on the size of the signs.

---

[3] LUBA noted in addition that it was not entirely clear that the city code allows all on-premises signs, regardless of content. *West Coast Media*, 44 Or LUBA at 533 n 26.

LUBA specifically rejected the above approach that is now urged by city before this court. The city asserted before LUBA that its denial of applicant's permit requests rested on the size of the signs, namely, that the proposed signs were 672 square feet in size, far larger than the maximum size permitted for all sign categories other than campaign signs. LUBA, however, did not agree with the city that that was the basis of the its decision denying the permits. LUBA explained that the challenged city decision held that billboards,

> "which the decision expressly equates with 'outdoor advertising signs,' are not permitted uses in any zone. Nothing in the decision even hints that that conclusion is based on the *size* of the proposed billboards."

*Id.* at 522 (emphasis in original; footnote omitted). LUBA concluded that there was "no reasonable doubt that the sole basis for denial was the city attorney's belief that the proposed billboards are not among the types of signs that are specifically allowed under the city's code, and therefore the proposed billboards are prohibited." *Id.* at 523.

On review to us, we understand the city to ask that LUBA be instructed to affirm the city's decision denying the permits on the basis of the size limitations imposed on "free-standing identification signs" under GMC 17.52.040. However, as discussed above, that is the same ground that LUBA specifically found was *not* the basis of the city's decision. The city contends that, nonetheless, LUBA had the authority to determine that the permits could be denied based on their noncompliance with the code's size limitations for signs. The city argues that LUBA's authority to do so is based on its obligation to construe the city's code in a constitutional manner if possible.

We do not agree, however, that such an approach is within the scope of LUBA's or our review authority. The city cites no authority authorizing LUBA, or this court, under this type of circumstance, to rule that a local government action essentially was "right for the wrong reason." Rather, LUBA's scope of review is governed by ORS 197.835, which provides LUBA with the authority to measure a local government land use decision against specific standards. LUBA's review authority does not allow it to redraft the local government

decision to address the arguably correct local or state standard rather than the standard the local government did apply, and then review that revised decision. LUBA must review the decision presented to it, not one that could have or should have been presented to it.

The legislature provided an exception to the general rule in ORS 197.835(11)(b) that LUBA can review only the local decision that was actually made. That exception applies in circumstances in which a local government's *findings* are defective:

> "Whenever the findings are defective because of failure to recite adequate facts or legal conclusions or failure to adequately identify the standards or their relation to the facts, but the parties identify relevant evidence in the record which clearly supports the decision or a part of the decision, the board shall affirm the decision or the part of the decision supported by the record and remand the remainder to the local government, with direction indicating appropriate remedial action."

ORS 197.835(11)(b). This case does not involve defective findings. We agree with LUBA's conclusions on that issue.

One additional matter that the parties raise is whether LUBA's disposition in this case was correct; specifically, whether its reversal of the city's denial was appropriate and, if so, the effect of the reversal. The parties disagree on those issues. Applicant contends that, in view of LUBA's holding reversing the city's denial of the permits, it necessarily follows that LUBA must remand the case to the city with instructions to approve the permit applications.

At the outset, we note that LUBA does not have the inherent authority of a court. Rather, as an administrative agency, LUBA's authority is derived from the legislation describing its authority. *1000 Friends of Oregon v. LCDC (Clatsop Co.)*, 301 Or 622, 627-30, 724 P2d 805 (1986). The statute describing LUBA's review authority, ORS 197.835, provides, in part:

> "(9) In addition to the review under subsections (1) to (8) of this section, the board shall reverse or remand the land use decision under review if the board finds:

"(a) The local government or special district:

"(A) Exceeded its jurisdiction;

"(B) Failed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner;

"(C) Made a decision not supported by substantial evidence in the whole record;

"(D) Improperly construed the applicable law; or

"(E) Made an unconstitutional decision; or

"(b) The state agency made a decision that violated the goals."

The pertinent statutes also provide that "[t]he board shall adopt rules defining the circumstances in which it will reverse rather than remand a land use decision or limited land use decision that is not affirmed." ORS 197.835(1). LUBA has, in fact, done so. Under that rule, LUBA is to remand a land use decision "for further proceedings" when the findings are insufficient to support the decision (except as provided in ORS 197.835(11)(b)), the decision is not supported by substantial evidence, the decision is flawed by procedural errors prejudicing the substantial rights of the petitioner or petitioners, or the decision improperly construes the applicable law but is not prohibited as a matter of law. OAR 661-010-0071(2). OAR 661-010-0071(1)(b) specifically provides that LUBA will reverse a land use decision when, among other reasons, the "decision is unconstitutional[.]"

■ There is only one instance under the pertinent statutes and rules in which LUBA is required to order a local government to grant approval of a denied land use application. ORS 197.835(10)(a) provides:

"The board shall reverse a local government decision and order the local government to grant approval of an application for development denied by the local government if the board finds:

"(A) Based on the evidence in the record, that the local government decision is outside the range of discretion allowed the local government under its comprehensive plan and implementing ordinances; or

> "(B)  That the local government's action was for the purpose of avoiding the requirements of ORS 215.427 or 227.178."

None of the circumstances described in ORS 197.835(10)(a) is present here. In summary, contrary to applicant's assertions, nothing in the pertinent statutes or in LUBA's rules requires LUBA to order the city to reopen the proceedings and grant its application. Based on the pertinent statute and rule, LUBA acted correctly in reversing the city's decision without instructing the city to approve the permit applications.

■      In addition, as a general matter, the reversal of a local decision denying a permit does not mean that the local government must necessarily approve a land use permit. The common understanding of "reversed" is that the decision is overthrown, vacated, set aside, or otherwise made void. *See Black's Law Dictionary* 1319 (6th ed 1990); *see also Black's Law Dictionary* 1320 (7th ed 1999) (defining a reversal as the overturning of a decision). Nothing in the general definition of "reversed" requires a local decision to be approved following a reversal.

■      For all of the above reasons, it is apparent that LUBA's reversal of the city's denial of the permits here does not necessarily require the city to issue the permits. The appropriate action for the city to take following LUBA's reversal depends on applicable local procedures as well as further actions of the parties. We would note, though, that LUBA found constitutional deficiencies in the code as a whole. Absent a local provision to the contrary, that legal holding by LUBA does not mean that the city necessarily is precluded from considering the application under provisions of the code other than constitutionally prohibited criteria.

Affirmed.